86 So.2d 549 (1956)
Rayford BURRIS, Father, and Eva Burris, Mother,
v.
The CITY OF NEW ORLEANS and The Travelers Insurance Company.
No. 20599.
Court of Appeal of Louisiana, Orleans.
April 2, 1956.
Rehearing Denied April 23, 1956.
Writ of Certiorari Denied June 11, 1956.
*550 A. P. Tureaud and A. M. Trudeau, Jr., New Orleans, for plaintiffs-appellants.
Henry B. Curtis, City Atty. and Alvin J. Liska, Asst. City and Trial Atty., New Orleans, for City of New Orleans, defendant-appellee.
F. C. Johnson, Jr., Porteous & Johnson, New Orleans, for Delta By-Products, Inc., defendant and appellee.
*551 JANVIER, Judge.
Plaintiffs, Rayford Burris and Eva Burris are the parents of Rayford Burris, Jr., who, according to the allegations of the original and supplemental petitions, was drowned in a pool of water which was allowed to exist in an area maintained by the City of New Orleans as a garbage dump.
Plaintiffs allege that their four year old son was attracted to the spot, which was easily accessible from his home, by the fact that in the pool there was "an abundant collection of sticks, timbers and small logs, and an uncountable number of seagulls incessantly lining its banks." They charge that the City of New Orleans was negligent "in permitting an unnecessary and unused pond of water to exist in such manner and locality so as to readily attract the playpursuing eyes of a child of little Rayford's age."
In their original petition they pray for judgment against the City of New Orleans and against the Travelers Insurance Company in the sum of $25,000. In their supplemental petitions they allege that the Letellier-Phillips Paper Company is the vendee of the salvage privilege which was purchased from the City, and that, under that salvage contract, that company was sold the right "to salvage the aforementioned Agriculture Street Dump," and they further allege that that company assigned its said salvage rights to Delta By-Products Incorporated, and they pray for solidary judgment in the sum of $25,000 against the City of New Orleans, Letellier-Phillips Paper Company and Delta By-Products Incorporated.
All of the defendants filed exceptions of no cause of action. These exceptions were maintained and there were judgments dismissing the suits as against all defendants. Plaintiffs appealed from the judgments which dismissed the suits as against the City of New Orleans and as against the Delta By-Products Incorporated. There was no appeal from the judgment dismissing the suit as against Letellier-Phillips Paper Company.
When the exception filed by Delta By-Products Incorporated was heard in the District Court, by joint agreement, there was offered in evidence a copy of the contract by which the City of New Orleans sold the salvage rights to Letellier-Phillips Paper Company.
There is not in any of the petitions any allegation, nor is there in the said salvage contract one word which would indicate that Letellier-Phillips Paper Company or its assignee, Delta By-Products Incorporated, had or could have had any responsibility whatsoever for the condition of the said dump. According to the petition all that was granted in the said contract was the right to salvage "materials." There is no charge that Delta By-Products Incorporated did or could have done anything which had the slightest causal connection with the unfortunate drowning of the son of plaintiffs. The exceptions filed by that company were properly maintained.
The exceptions filed by the City of New Orleans are based on the well established principle that a municipality cannot be held liable ex delicto for damages resulting from the exercise by it of a governmental function. The principal upon which the City relies is stated in Manguno v. City of New Orleans, La.App., 155 So. 41. There, stating that the question presented was "* * * whether or not the operation of the garbage incinerator plants and their auxiliaries by the city is a governmental or a proprietary function, * * *", we held that the collection and disposal of garbage by the City of New Orleans is a governmental function.
The latest expression of our Supreme Court on non-liability of a municipality for damages sustained as a result of the exercise by it of a governmental function may be found in Barber Laboratories, Inc., v. City of New Orleans, 227 La. 104, 78 So.2d 525.
Counsel for plaintiffs do not seriously contend that ordinarily, where there is no charge made for the operation of a garbage department, that operation is a governmental *552 and not a proprietary function of the City government and that consequently there is usually no liability in the City for the results of negligence in the operation of such a department. But counsel say that that principle, which may ordinarily be applied where the City is engaged in the carrying out of a governmental function, has no application here for either or both of two reasons: First, they say that under certain statutes the City of New Orleans no longer has the right to operate a garbage dump, and that therefore it cannot be permitted to contend that in the operation of such a dump, which plaintiffs say is not permitted by law, the City is engaged in carrying out a governmental function; and second, they say that even if there is governmental immunity where a municipality is engaged in the exercise of a governmental function, that immunity is lost where the function is carried out in such a way as to create a nuisance and the nuisance itself causes damage. And counsel say that here a nuisance was created and hence the governmental immunity no longer existed.
The first of these contentions, that our state laws no longer permit the City of New Orleans to operate a garbage dump, is founded on the idea that, because of the provisions of LSA-R.S. 33:4168, such dumps are now prohibited within corporate limits. The first paragraph of that section reads as follows:
"A municipality of over three hundred thousand population which has established garbage plants or incinerators under the provisions of this Subpart shall not maintain or allow within its corporate limits any garbage or refuse disposal dumps or maintain or allow any burning dumps or dump heaps."
However, that section does not stand alone. It is to be found in Sec. 4161 et seq., in Sub-Part A of Part I of the cited LSA-Revised Statute which covers the "Ownership, Operation, and Financing" of Public Utilities. It is our opinion, and it was the opinion of the District Judge, that the prohibition against garbage dumps has application only where a municipality either has issued bonds for the construction of a garbage plant or incinerator, or makes a charge which is devoted to the establishment and operation of such a garbage department, that a municipality is then not permitted to operate a garbage dump which would be in competition with the incinerator or with the operation of the department for which a charge is made or for the establishment of which bonds were issued.
The other sections of this title of the Revised Statutes seem to us to contemplate this result. This is pointed out by the District Judge in his reasons:
"The Revised Statutes only prohibit the operation of open garbage dumps or fills when they are in competition with similar facilities for which the City makes a charge when such facilities have been financed by bonds to be serviced and funded from taxes imposed against owners of real estate."
Counsel for plaintiffs criticize this conclusion of the District Judge, saying that the question of whether or not a function exercised by a municipality is governmental or proprietary should not be made to depend upon whether a charge is made therefor. This is quite true, but the District Judge did not hold, nor do we hold, that the collection of a charge or a tax for services should be the determining factor as to whether a function is or is not governmental. Neither we nor the District Judge pointed to the collection of a charge as the reason for holding that here the operation of the garbage dump should be held to be a governmental function. We point to the absence of a charge and to the fact that bonds were not issued merely for the purpose of showing that section 4168 of Title 33 of the LSA-Revised Statutes has no application here, since that section has application only where a charge is made or where bonds are issued. We see nothing which prohibits the City from operating such a dump, and consequently hold that *553 in operating the dump it violated no statute and that it operated it as a governmental function.
When we come to consider the question of whether there may be liability in a municipality which, in the exercise of a governmental function, creates a nuisance which nuisance causes damage, we find presented a most interesting question.
With the assistance of counsel there has been found in the jurisprudence of this State only one case in which this particular question is even remotely referred to. In Manguno v. City of New Orleans, supra, this Court, in reaching the conclusion that the operation of a garbage department is a governmental function, cited McQuillan on Municipal Corporations, Vol. 6, section 2840, from which we have already quoted. There, as we noted, the author, McQuillan, stated that the rule of governmental immunity "has often been applied to the removal of garbage", but he followed this statement with a proviso that this immunity exists only if "in the discharge of such duty no nuisance is created."
Counsel for plaintiffs point to the fact that we quoted that language, and they say that our inclusion of that proviso indicated our approval of that exception to the general rule of governmental immunity.
It should be noted at this time that nowhere in the pleadings here does there appear an express charge that, in operating the garbage dump, the city created a nuisance, and counsel for the City direct our attention to this absence, and they contend that, in the absence of such an express charge, plaintiffs cannot be heard to rely on the contention that a nuisance was created and that the loss resulted from this nuisance. We cannot fully agree with counsel for the City.
If the other allegations made by plaintiffs set forth facts from which it may be determined that, though there is no express use of the word "nuisance", as a matter of fact a nuisance has been created and the facts alleged may be construed as charging that such a nuisance has been created, then the mere fact that the word "nuisance" has not been used, would not justify the conclusion that there is no charge that a nuisance was created.
The question of whether a pool of water may be considered an attractive nuisance has been passed upon by courts in almost every jurisdiction in this country and probably elsewhere. Some have held that the attractive nuisance doctrine should not be applied to ponds or other accumulations of water. A substantial majority, we think, have held that under certain conditions the doctrine should be applied. Certainly that question was put at rest in this State when, in Saxton v. Plum Orchards, Inc., 215 La. 378, 40 So.2d 791, 795, our Supreme Court applied it to a pool or accumulation of drainage water. The Court, stating that the question was "`whether under the foregoing circumstances the turntable or attractive appliance doctrine is applicable'", quoted with approval from its earlier decision in Fincher v. Chicago, R. I. & P. Ry. Co., 143 La. 164, 78 So. 433, in which it said:
"`* * * a pool of water is attractive to children; but, for the application of said doctrine, it does not suffice that the thing from which the injury has resulted was in itself attractive or, in other words, was such that the instincts of children would prompt them to meddle, or play with or in it, but it must be so situated as to lure or attract children from the safe place where they have a right and are likely to be, and induce them to enter the premises where the attraction is in order to meddle or play with or in it, and the danger of its so alluring children must be so obvious that a due regard for the safety of the children would suggest to a man of ordinary prudence and necessity of taking precautions for their protection. * *'"
There are, as pointed out in Saxton v. Plum Orchards, Inc., many factors which must be considered before a conclusion may be reached in any particular case; such as the age of the child and its ability to understand and avoid danger; whether there *554 was reason to anticipate the presence of children; whether there was a strong likelihood of the accident; whether the danger was one other than those ordinarily encountered; and whether the precautions taken were those which would be taken by a reasonably prudent person under similar circumstances.
Our conclusion is that there is no doubt that in this State it is settled that a pond, under certain conditions, may be considered as an attractive nuisance.
We thus pass to the question of whether the doctrine under discussion is applicable to a municipality which is engaged in a governmental as distinguished from a proprietary function.
Although, as already stated, we have found no case in our jurisprudence in which it has been expressly held that the usual governmental immunity is lost where the damage complained of results from a nuisance, there are some cases in other jurisdictions in which it has been so held. Cases are cited in Vol. 63 C.J.S., Municipal Corporations, § 770, p. 66, from which we quote the following:
"Where a municipal corporation creates, maintains, or permits a nuisance, it is liable for damages to any person suffering special injury therefrom, irrespective of negligence and notwithstanding the municipality is exercising governmental powers or functions; * * *."
On the other hand, in American Jurisprudence, Municipal Corporations, Vol. 38, p. 283, section 588, appears the following statement which is contradictory of that just above quoted from C.J.S.:
"The doctrine of attractive nuisance applies to municipal corporations in so far as it is applicable in those cases in which municipal corporations are held to be liable for negligence, but, of course, can have no application in cases in which the negligence occurred or the attractive condition was created in the exercise of a governmental function."
As indicated by these divergent views, Courts of this country have divided themselves into two groups, one of which follows the thought that if a governmental function is involved, there is no liability for damage, even though it may result from the existence and maintenance of an attractive nuisance. Those in the other group feel that under certain circumstances a municipality may be held, even though it is engaged in the performance of a governmental function.
We shall not cite the numerous decisions to which we refer, but direct attention to 36 A.L.R. 34, 153; 45 A.L.R. 982, 989; 60 A.L.R. 1444, 1451; Hoffman v. City of Bristol, 113 Conn. 386, 155 A. 499, 75 A.L.R. 1191, 1196; 102 A.L.R. 656, 658; also the two citations already given, one in 38 Am. Jur., Municipal Corporations, and the other in 63 C.J.S., Municipal Corporations.
All of the authorities agree that, as stated in Vol. 63, C.J.S., Municipal Corporations, § 770, page 69:
"It is, of course, essential to the liability of a municipality for injuries resulting from an alleged nuisance that a nuisance shall have existed, * * and that the injury incurred was the proximate result of the maintenance of the nuisance; * * *."
And this requirement is interesting when we note that counsel for plaintiffs, in contending that, in the operation of the dump, the City created a nuisance, point to a report obtained by the City itself from a firm of consulting engineers, which report is on the subject of "Garbage Disposal Facilities and Practices in New Orleans." In this report it is said that such a garbage dump "has been the source of innumerable complaints, because of dirt, stench, smoke, etc.; and has, due to the growth of the City, become a public nuisance."
It thus appears that the nuisance which is expressly pointed to by plaintiffs *555 results from stench, smoke, etc., and is not based on the fact that a pond or pool of water was allowed to accumulate. Nevertheless, the petitions of plaintiffs in which they charge that the pool was allowed to accumulate and to remain, contain allegations which, in our judgment, make the charges which are usually found where damage is alleged to result from the existence of an attractive nuisance. As already shown, it is charged that the pond was allowed to accumulate; that seagulls incessantly lined its banks, and that such conditions were calculated "to readily attract the play-pursuing eyes of a child of little Rayford's age."
Though the word "nuisance" does not appear in any of these charges, it is obvious that it was intended to charge that these conditions constituted an attractive nuisance and that the drowning of the little boy resulted from this nuisance.
We conclude that the petition does charge that the City permitted the continued existence of an attractive nuisance and that the loss of petitioners' son resulted from this nuisance. Just whether any particular conditions constitute an attractive nuisance in any particular case must be determined after an examination of all of the facts in each case. There must be taken into consideration the age of the child, the accessibility of the nuisance, and whether the damage resulted from active negligence rather than from the existence of a nuisance. These and many other things must be considered.
When we used the term "active negligence" we mean to distinguish between a mere act of omission or commission of an individual employee and the continued existence of a danger which is not chargeable to the negligence of any particular employee or group of employees but results from the failure to eliminate or to remove a danger which, through the passive negligence of many or all, has been permitted to continue.
The line of distinction is very faint and in many instances it may be very difficult to determine just where to draw the line. For instance, we think that should the operator of a garbage truck through negligence injure some one, the City, contending that the injury resulted from negligence, might, because of its governmental immunity, avoid liability, whereas, on the other hand, should an attractive vehicle for any substantial length of time be left unguarded where it might easily be tampered with by young children and should injury result from such acts of immature children, there might be liability as a result of the creation of an attractive nuisance. Westerfield v. Levis Bros., 43 La.Ann. 63, 9 So. 52.
After a study of the numerous authorities and a consideration of the facts which seem to be required if the doctrine is to be applied against a municipality, we conclude that possibly there may be circumstances under which the doctrine should be applied even where a municipality is engaged in the performance of a governmental function, and we therefore deem it advisable to overrule the exception of no cause of action and to remand the matter to the District Court to the end that there may be presented evidence showing all of the facts and circumstances surrounding the unfortunate occurrence. From all those facts it may then be determined whether there may be liability for the unfortunate loss of the plaintiffs' son.
The exception of the City of New Orleans is overruled and the judgment, insofar as it dismisses the suit against the City of New Orleans, is annulled, avoided and reversed and the matter is now remanded to the Civil District Court for the Parish of Orleans for further proceedings according to law and not inconsistent with the views herein expressed. The judgment, insofar as it dismisses the suit as against Delta By-Products Incorporated is affirmed at the cost of plaintiffs.
Reversed in part, affirmed in part.