REGAN, Judge.
Plaintiff, Mrs. Geneiva Phillips, wife of Travis Martin and mother of Travis Martin, age nine years, and Jeff Martin, ago seven, instituted this suit against the defendants, the City of New Orleans and the Sewerage & Water Board, endeavoring to recover on her behalf the sum of $100,000 for damages incurred as the result of her children being attracted to and subsequently falling into the London Avenue drainage *560 canal wherein they both drowned on June 16, 1955.
Defendants answered by pleading the exceptions of no' right and no cause of action, which were sustained by the trial court.
From a judgment in favor of the defendants dismissing plaintiff’s suit, she has prosecuted this appeal.
For the purpose of considering the validity of the foregoing exceptions, the allegations of plaintiff’s petition must be accepted as true.
Plaintiff in her petition asserted in substance that she resides in the St. Bernard housing project, or in the vicinity of the London Avenue Canal, which is used by the City of New Orleans as a principal outfall canal to relieve the sewers and drains in this area; there are also several pumping stations operated by the Sewerage & Water Board in conjunction with the City for the purpose of both removing the water flowing into the canal and to avoid a flood of the City’s streets; the canal crosses Gentilly. Boulevard, a thoroughfare of the City, and the neighborhood contains several thousand children; the canal was unfenced at the time that the children lost their lives despite the' protests' of civic groups and other unorganized people residing in that area who became roused as a result of the drowning of twelve children in recent years; they demanded that the canal be fenced since it had become a dangerous and attractive nuisance to young children who congregate and play in the area where the canal traverses the highway.
Plaintiff then asserts that Jeff, the younger of the two boys, fell into the canal, and Travis, who could swim, jumped in to save him, grabbed his body, and swam to the apron, but could not secure a hold thereon because it was paved, and subsequently both boys drowned; that the canal because of its paved apron is a dangerous trap.
Plaintiff finally asserts that the children were non sui juris and the defendants were guilty of negligence in failing to erect a fence to guard the canal and thus prevent children from entering therein.
As related hereinabove, both defendants pleaded the exceptions of no cause or right of action principally predicated upon the conclusion that (a) the canal is not an attractive nuisance and (b) the operation and maintenance of the drainage system of the City of New Orleans is a governmental as distinguished from a proprietary function and that the Sewerage & Water Board is exempt from an action in tort in all matters relating to the operation and maintenance of the drainage system.
Nowhere in the petition do there appear facts which show that under our jurisprudence a drainage canal as distinguished from pools[1] of water has ever been interpreted as an attractive nuisance, and therefore the only question posed for our consideration is whether the defendants are exempt from an action in tort because they are engaged in the execution of a governmental function.
The Supreme Court in 1935[2] related that:
“The history of the sewerage and water board of the city of New Orleans shows that it was created for the purpose of avoiding a repetition of malaria, typhoid, and yellow fever epidemics that had plagued people of the city of New Orleans, the state of Louisiana, and the entire South. Gov. Foster’s proclamation to the General Assembly of the state of Louisiana, dated August 8, 1899, contained in the Journal of the House of Representatives, on page 5, requested the enactment of Acts Nos. 4 and 6 of the Extra Session of 1899, *561 since the New Orleans taxpayers had voted a 2-mill tax to create the sewerage and water hoard, believing that this legislation was not only for the benefit of the people of the city of New Orleans, but for the benefit of the whole state, as it was a sanitation and health .regulation or measure. The Legislature was acting under its reserve or police power in creating the sewerage and water board, because it was a matter that affected the general welfare and health of the people throughout the state.
“The water supply, drainage, and sewerage disposal of New Orleans is handled by the sewerage and water board; the state police power is involved, since it has the right to protect the general public from pestilences, epidemics, contagious diseases such as malaria, typhoid, and yellow fevers, thereby promoting the public weal. Medical science has definitely determined that yellow, typhoid, and malaria fevers are caused by germs and insects bred and propagated as a result of improper drainage, inadequate and faulty sewerage disposal, and contaminated drinking water. In order to avoid the further repetition of the spread of those diseases, the water supply, sewerage disposal, and drainage of the city was placed with the sewerage and water board. The prevalence of these maladies had caused general quarantine, paralyzing public and private business and causing general public loss.
“ * * * So, it would seem that the operation of the sewerage and water ■board controlling the drainage, sewerage, and water systems of the city of New Orleans is not an ordinary governmental function of the municipal government. It vitally concerns and affects the health and lives of the people throughout the state. The operation of this board is the performance of a governmental function delegated to it by the sovereign state.”
In a relatively recent case decided by us in 1954 [3] and in which the above case is both cited and quoted from, we expressed the opinion that:
“* * * the operations of the Sewerage & Water Board in the construction and maintenance of drainage canals are purely governmental and not in any sense proprietary.”
The foregoing rationale likewise applies to the City of New Orleans under the facts enumerated in plaintiff’s petition, and therefore its exception was also properly maintained.
Nothing that we may say or do will ever relieve the suffering and anguish which this mother has endured because of the tragic death of her children, and we sincerely share in her grief.
It may be true, although we find it unnecessary to decide this point, that these children are not to be blamed for negligence, but “municipal governments cannot foresee and guard against all the dangers incident to the rashness of children. Municipalities are not insurers of the lives or safety of children. The municipal authorities have a right to presume that, for every child under the age of discretion, there is some one of mature judgment on whom rests the special duty and responsibility for the safety of the child.”[4]
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Saxton v. Plura Orchards, Inc., 1949, 215 La. 378, 40 So.2d 791; Burris v. City of New Orleans, La.App.1956, 86 So.2d 549.

. State ex rel. Porterie v. Walmsley, 1935, 183 La. 139, 191-193, 162 So. 826, 842-843.

. Beck v. Boh Bros. Const. Co., La.App. 1954, 72 So.2d 765, 767.

. Biegel v. City of New Orleans, 1918, 143 La. 1077, 1080, 79 So. 867.