145 So.2d 50 (1962)
Mr. and Mrs. Winnie SLAUGHTER, Plaintiffs and Appellants,
v.
GRAVITY DRAINAGE DISTRICT NO. 4, Defendant and Appellee.
No. 625.
Court of Appeal of Louisiana, Third Circuit.
September 24, 1962.
Rehearing Denied October 18, 1962.
Certiorari Denied December 10, 1962.
*51 Charles C. Jaubert, Lake Charles, St. Romain & Fuljenz, by Raymond D. Fuljenz, Lake Charles, for plaintiffs-appellants.
Henry L. Yelverton, Lake Charles, for defendant-appellee.
Before TATE, CULPEPPER and HOOD, JJ.
HOOD, Judge.
This is a tort action instituted by Mr. and Mrs. Winnie Slaughter against Gravity Drainage District No. 4, arising out of the death of plaintiffs' minor son, Rollins Slaughter. The trial court sustained an exception of no cause and no right of action filed by the defendant, and plaintiffs have appealed from that judgment.
The suit is based on the doctrine of "attractive nuisance." Plaintiffs allege that a few days before August 4, 1960, the defendant, through a construction agency, had completed or was completing the deepening, dredging and clearing of a drainage canal which was located approximately 30 yards from their home in the City of Lake Charles, that their 11 year-old son was playing near that canal on August 4, 1960, and that his body was later found dead in the drainage ditch in approximately nine feet of water. *52 They allege that the child did not know how to swim and that his death resulted from the negligent actions of the defendant and its agents in the following respects:
"(1) By the negligent failure of the defendant and their construction agents in failing to provide any safeguards against persons falling into their excavation such as fences, warning signs, `No Trespassing' signs, etc.
"(2) By the negligent failure of the defendant and their agents in constructing the ditch in such a manner as to result in an extremely steep incline on the edge of the ditch resulting in the fact that it was difficult, if not impossible, for a person to remove himself from the ditch once he had fallen in.
"(3) By constructing an attractive nuisance to minor children without providing safeguards for their protection."
As a basis for its exception of no right and no cause of action, the defendant drainage district contends: (a) that it is immune from suit in tort because in maintaining the canal it was engaged in a governmental function; and (b) that the petition does not allege actionable negligence under the tort law of Louisiana.
The trial court, in sustaining the exception of no right and no cause of action, held that the canal "cannot be considered as an attractive nuisance," and that the defendant was exercising a governmental function in operating and maintaining the canal and for that reason it is immune from tort liability in this case. We think it is necessary to discuss only the issue of whether the petition alleges actionable negligence under the tort law of Louisiana, since we feel that the case can be disposed of on that issue.
The jurisprudence of this state has been established to the effect that a pond or pool of water, possessing some unusual features which render it particularly attractive and dangerous to children of tender years, may constitute an attractive nuisance, and in such cases the proprietor may be held liable in tort for injury to, or for the death of, a small child caused by the maintenance of such a pool without adequate safeguards. Saxton v. Plum Orchards, 215 La. 378, 40 So.2d 791; Burris v. City of New Orleans, La.App.Orl., 86 So.2d 549 (Cert. denied). We will assume, without determining the issue, that the rules applicable to ponds or pools of water are also applicable to drainage canals, because certainly no greater duty rests upon the operator of a drainage canal than that which rests upon one who maintains a pool or pond of water.
In determining whether a body of water is an attractive nuisance in a particular case, many factors must be considered, such as the age of the child, his ability to understand and avoid dangers, whether the proprietor has reason to anticipate the presence of children, whether there was a strong likelihood of the accident and whether the danger was one other than those ordinarily encountered. Other factors to be considered include whether the facility did or did not serve a necessary or useful purpose, what means could have been employed to avoid the danger, and whether the precautions taken were reasonable. See Burris v. City of New Orleans, supra.
In Saxton v. Plum Orchards, supra, the pool was found to be unusually attractive to children. Its banks were abrupt and vertical, with deep water immediately beside them. In it was a large quantity of debris, consisting of small timbers with which children especially enjoyed playing, using them as boats, as well as crawfish, minnows and frogs, which attract childish interests. The facts in that case showed also that plaintiff's child, who drowned in the pool, was only four years of age and that the pool was completely useless. Under those circumstances, the Supreme Court found that the pool was an attractive nuisance.
In Burris v. City of New Orleans, supra, it was alleged that a rather large pool of water was permitted to exist in an area which was maintained by the city as a garbage *53 dump. In this pool was a "collection of sticks, timbers and small logs" which served as attracting features for small children. The court held that under some circumstances this pool might be considered as an attractive nuisance, and for that reason it overruled the exception of no cause or right of action which had been filed by defendant city, and remanded the case to the lower court for trial. In doing so, however, the Court said:
"We conclude that the petition does charge that the City permitted the continued existence of an attractive nuisance and that the loss of petitioners' son resulted from this nuisance. Just whether any particular conditions constitute an attractive nuisance in any particular case must be determined after an examination of all of the facts in each case. There must be taken into consideration the age of the child, the accessibility of the nuisance, and whether the damage resulted from active negligence rather than from the existence of a nuisance. These and many other things must be considered.
* * * * * *
"After a study of the numerous authorities and a consideration of the facts which seem to be required if the doctrine is to be applied against a municipality, we conclude that possibly there may be circumstances under which the doctrine should be applied even where a municipality is engaged in the performance of a governmental function, and we therefore deem it advisable to overrule the exception of no cause of action and to remand the matter to the District Court to the end that there may be presented evidence showing all of the facts and circumstances surrounding the unfortunate occurrence. From all those facts it may then be determined whether there may be liability for the unfortunate loss of the plaintiffs' son."
The Saxton and Burris cases are the only ones which have been pointed out to us where the courts of this state have determined that a body of water constitutes an attractive nuisance. In other cases the courts have found that the bodies of water there involved did not constitute such nuisances. In Peters v. Town of Ruston, La. App. 2 Cir., 167 So. 491, for instance, the judgment of the trial court sustaining an exception of no cause or right of action was affirmed, where it was alleged that two children, aged 13 and 16 years, were drowned in an artificial lake located on property belonging to the defendant town. Although the lake was shallow near its banks, it attained a depth of 15 feet in places with some logs floating on its surface. The two girls, while wading in the shallow portions of the lake, grasped a floating log which carried them beyond wading depth and thereafter they drowned. The Court held that the attractive nuisance doctrine was not applicable, "considering the ages of the children in the case at bar, the distance of the lake from their home, that it was not of an unusual nature, that it was located outside of the corporate limits of the town of Ruston, that they were not required to pay any charge or fee for entering the premises, and that there appears to have been no unknown, hidden, or concealed dangers connected with the place of drowning." In that case the court also held that this doctrine is applied only in cases where children are too young to understand and appreciate danger, and that although no definite age limit has been fixed at which a child ceases to come under the operation of the rule, "most of the cases of this country in which it has been applied have concerned children of less than ten years of age."
In McKenna v. City of Shreveport, 2 Cir., 16 La.App. 234, 133 So. 524, plaintiff's 10 year-old son was drowned while playing on a raft in a pond of water which had been formed when the city constructed a fill for a street. The Court, in holding that plaintiff's petition did not state a cause of action, said "that the pond in question, considered in connection with the age of the child, was not an attractive danger to children within *54 the meaning of the doctrine," and that the attractive nuisance doctrine does not apply to a pond "unless there is some unusual condition or artificial feature other than the mere water and its location, rendering the place peculiarly dangerous to children." It also noted that the doctrine does not apply "unless the danger be unknown, concealed, or hidden," and said:
"The plaintiff has not alleged in the present case that the pond had any unusual features rendering it peculiarly dangerous to children. Therefore, assuming the pond to be an ordinary one, we must further assume that the element of danger that did exist was not latent or unknown, but, on the contrary, was obvious."
With reference to the age of plaintiff's child at the time of the accident, the Court in the McKenna case said:
"* * * as the plaintiff has not alleged that the child was of inferior intellect, we must assume that he possessed the mental faculties usually found in a child of the age of ten. The average child of the age of ten years, under the weight of authority, is chargeable with knowledge of the danger of drowning."
Since plaintiffs in the instant suit have not alleged that their child was of inferior intellect, we also must assume that he possessed the mental faculties usually found in a boy of the age of eleven years, and thus he was chargeable with knowledge of the danger of drowning.
There, of course, is no arbitrary line of distinction dividing children into age groups for the application of the attractive nuisance doctrine, the courts having refused recovery in cases where the child was very young. Such a case was that of Blum v. Weatherford and Cary Bros., 121 La. 298, 46 So. 317, where a four and one-half year-old child drowned in a canal which had recently been constructed by defendant. After the construction had been completed, defendant removed most of its materials and equipment but left two boards or stringers across the canal, and the child fell off one of these boards while attempting to cross the canal. The Supreme Court held that the maintenance of the canal with these boards across it did not constitute an attractive nuisance.
In Biegel v. City of New Orleans, 143 La. 1077, 79 So. 867, plaintiffs' four year-old child was drowned in a wooden culvert which ran under a street. A rain had filled the ditches and water was rushing through the culvert. The child, while playing on the sidewalk, fell into the ditch, and was drawn into the culvert and drowned. The trial court rendered judgment in favor of plaintiff, but this judgment was reversed by the Supreme Court which held that defendant was not negligent in maintaining this culvert without guard rails. The court said:
"* * * municipal governments cannot foresee and guard against all the dangers incident to the rashness of children. Municipalities are not insurers of the lives or safety of children. The municipal authorities have a right to presume that, for every child under the age of discretion, there is someone of mature judgment on whom rests the special duty and responsibility for the safety of the child."
The issues presented in Martin v. City of New Orleans, La.App.Orl., 98 So.2d 559, are similar in many respects to those presented here. In that case, two children, seven and nine years of age, were drowned in a drainage canal operated by the Sewerage and Water Board of the City of New Orleans. The canal had vertical sides which were paved with concrete, and it was alleged that because of the paved apron the children who fell into the canal were unable to secure a hold on the banks of the canal or to get out of it. The canal was unfenced, in spite of the fact that the City had previously received protests from civic groups and was aware of the fact that several thousand children lived near the canal and *55 that twelve children had drowned in it in recent years. The judgment of the trial court sustaining an exception of no cause of action filed by defendant was affirmed. Although the decision in that case was grounded primarily on the conclusion that the city was immune from tort liability because it was exercising a governmental function in maintaining the canal, we interpret the decision as also holding that the drainage canal was not an attractive nuisance. In both that case and this one the sides of the canal were steeply graded, there were no warning signs near that facility, and the canal was near the residence of the plaintiffs. In the Martin case, unlike the instant suit, the city had been apprised of the dangerous nature of the canal and the boys who drowned in it were younger than plaintiffs' son, and thus they could not be expected to exercise as much care and discretion while in the vicinity of the canal. It appears to us, therefore, that plaintiffs in the instant suit are in a less favorable position to recover than was the plaintiff in the Martin case.
There, of course, are inherent dangers of drowning in every body of water, including a canal. A drainage district which constructs and maintains a canal as a part of its public function, however, does not become the insurer of the lives and safety of all children who come near the waterway. Where the canal is open and in full view of those who come near it, the facility itself serves as a warning of the dangers which are apparent especially to those who are of the age of discretion. Where the danger is not hidden or concealed and there are no unusual circumstances which render the facility peculiarly attractive to young children, we think there is no duty on the part of the drainage district to provide safeguards against persons falling into the excavation, such as fences or warning signs. Where those conditions exist the drainage district has the right to presume that for every child under the age of discretion, there is some one of mature judgment on whom rests the special duty and responsibility for the safety of the child. Also, we feel that the construction of the canal with extremely steep inclines along its banks or sides alone does not constitute actionable negligence on the part of the drainage district.
Considering all of the facts as set out in the petition in a light most favorable to the plaintiffs, we conclude that the petitioners have not alleged any unusual features or physical characteristics of this canal which made it peculiarly attractive and dangerous to children. No hidden or concealed dangers are alleged, and no facts are set out in the petition which offset the presumption that plaintiffs' eleven year-old child had the mental capacity to observe, appreciate and guard against the danger of drowning in such a canal. It is alleged that the facility maintained by defendant was a "drainage canal," which implies that it served a useful purpose, and there are no allegations to the effect that it was useless.
While we are conscious of the tragic loss sustained by plaintiffs and the grief which they have experienced as a result of this accident, we must hold that the attractive nuisance doctrine, as construed by our courts, is not applicable in this case and that the trial court correctly sustained the exception of no cause of action filed by defendant. Having arrived at that conclusion, it is not necessary for us to consider the question of whether the defendant was performing a governmental function and thus was immune from tort liability.
For the reasons herein assigned, the judgment of the district court is affirmed. All costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.
TATE, Judge (dissenting).
The trial court was originally correct in dismissing this suit on the ground that the defendant drainage district was immune from liability arising out of the performance *56 of a governmental function. However, subsequent to its judgment (and before this appeal was decided by us), the Legislature specifically waived the immunity of the defendant drainage district from suit or from liability. Act 189 of 1962. The defense of governmental immunity therefore became moot. Long v. Northeast Soil Conservation District, 226 La. 824, 77 So.2d 408; Nash v. Rapides Parish School Board, La.App. 3 Cir., 130 So.2d 544. The judgment of the trial court dismissing the suit should therefore have been reversed and the case remanded for further proceedings below. Nash v. Rapides Parish School Board, cited above.
Despite this, my brothers of the majority have affirmed the dismissal on another ground. The majority has held that, on the face of the pleadings, the exception of no cause of action should be sustained as allegedly not showing any actionable negligence on the part of the defendant.
The plaintiffs have alleged that their child met its death through an attractive nuisance constructed and maintained by the defendant immediately adjacent to their home. In holding whether or not a created hazard constitutes an attractive nuisance that is, an unusually dangerous hazard for children reasonably and foreseeably endangering their safety, it is proper to balance the social utility of the hazard created against the amount of danger to children so created. A.L.I. Restatement of Torts, Section 339; Holland v. Vidrine, La. App. 3 Cir., 133 So.2d 809. Because of this, and because of the great social utility of drainage canals, like my brethren, I suspect that the trial on the merits will not actually show that the defendant drainage district really created so unreasonable and dangerous a hazard as to import liability, or was so unreasonably heedless of the safety of children as to be liable.
But the question before us is not what the evidence on the trial on the merits will reveal. The question is whether the plaintiff's suit should be dismissed on the face of the pleadings, without letting them have their day in court in which they may seek to produce the evidence concerning the amount and the reasonableness of the hazard created, and the foreseeability of the danger to children created under the factual circumstances of this case (by which the court may then determine whether in fact, as the plaintiffs have alleged, an attractive nuisance was created).
The majority inferentially recognizes that a drainage canal without safeguards might be an attractive nuisance under certain circumstances, such as where the danger is "hidden or concealed" or where there are "unusual circumstances which render the facility peculiarly attractive to young children", to quote the majority opinion. Nevertheless, the majority finds that the petition must fall because it did not affirmatively additionally allege that such extra-special characteristics made the drainage canal an attractive nuisanceeven though the plaintiffs did allege that the defendants had constructed an attractive nuisance just outside the plaintiffs' door without providing safeguards for the protection of minor children, and that the defendant had constructed such ditch with a dangerously steep incline and without adequate safeguards against persons falling into it.
With due respect for my able brethren, I think that they are requiring a technical exactitude and detailing of pleading allegations of fact in a negligence suit which is foreign to the modern procedural law of Louisiana; a spirit of construing pleadings which, before the modern liberalization of our procedural law, meant that an injured plaintiff won or lost his law suit, not on the basis of the facts which he might have produced at the trial, but on the basis of the wording of the petition prepared by his attorney. There is little excuse for such a hyper-technical approach to determining the sufficiency of a petition in a tort action, especially since a defendant may by an exception *57 of vagueness require that facts pleaded by a petition be amplified as to details, to determine the legal sufficiency thereof, and since by modern Louisiana discovery procedure a defendant may fully protect itself against surprise at the trial.
In short, in my opinion the majority holding that the plaintiffs herein were required to allege more factual details in order to stay in court, is contrary to the modern jurisprudence, where a petition is dismissed only if it affirmatively shows that the plaintiff has no cause of action. As recently stated in reversing the trial court and overruling an exception of no cause of action in Steagall v. Houston Fire & Casualty Ins. Co., 138 So.2d 433 at 437:
"It is to be remembered that in passing on an exception of no cause of action, a plaintiff is not required to negate all statements of fact which might bar his own recovery but, rather, the exception must be overruled unless its allegations affirmatively establish that under no facts admissible under the allegations of the petition does he have a cause of action and unless its allegations exclude every reasonable hypothesis of facts other than those showing that the plaintiff cannot recover as a matter of law. Rogers v. T. L. James & Co., La.App. 3 Cir., 128 So.2d 829; Granger v. Stine, La.App. 3 Cir., 127 So.2d 228; Bergeron v. Greyhound Corp., La.App. 1 Cir., 100 So.2d 923. That is, `if a petition sets forth a state of facts consistent with a cause of action, same will not be dismissed on exception of no cause of action, because the language of the petition may also be interpreted to include a state of facts inconsistent with a cause of action. West v. Ray, 210 La. 25, 26 So. 2d 221.' Johnson v. Graham, La.App. 2 Cir., 35 So.2d 278, at page 280."
In the leading case on the subject, the Louisiana Supreme Court enunciated the criteria of liability in an attractive nuisance case as follows, Saxton v. Plum Orchards, 215 La. 378, 40 So.2d 791, 796:
"[1] * * * was this pool [or body of water] unusually attractive to and dangerous for children?
"[2] Was there a strong likelihood of an accident?
"[3] Could the presence of children be reasonably anticipated?
"[4] Did defendant fail to take precautions for the protection of children such as a reasonably prudent person would have taken under the circumstance?"
Until the facts are before us, I do not see how on the face of the pleadings we can possibly say whether or not the defendant took any precaution reasonably required under the circumstances for the protection of children; for the petition does not affirmatively show (nor is it required to for purposes of an exception of no cause of action) all the surrounding circumstances, in the light of which the court must judge whether or not the defendant failed "to take precautions for the protection of children such as a reasonably prudent person would have taken under the circumstances", Saxton v. Plum Orchards, above cited, at 40 So.2d 796.
I feel that the present opinion is a great step backwards towards requiring an unnecessary technical exactitude and detail of pleading in fact cases and exemplifies a procedural philosophy which overlooks that the pleadings are not the end-all of a law suit, but merely a vehicle by which the issues are posed and narrowed for the presentation of the facts, by which the case is to be decided.
I respectfully dissent; although with the utmost deference for my brothers of the majority.
On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents from denial of rehearing.