CULPEPPER, Judge.
Plaintiffs’ six year old boy drowned in a drainage canal maintained by defendant. The parents sue for damages on the grounds that the canal is an attractive nuisance and/or defendant was guilty of negligence. From an adverse decision of the district judge on the merits, plaintiffs appeal.
There is no substantial issue of fact. The defendant, Gravity Drainage District No. 5 of Calcasieu Parish, was created by popular vote in 1957, and a bond issue of $7,500,000 approved, for the purpose of improving drainage in the city of Sulphur and its immediate vicinity. The entire drainage program included over 100 miles of open ditches and canals, as well as some covered channels, pipes, etc. A principal part of this program was the “W-3 Main”, a large paved ditch or canal, approximately 2J4 miles long, into which the various lateral drainage structures flowed. W-3 Main was constructed along a portion of the previously existing channel of Bayou d’lnde. As a result of the drainage program, the Bayou was widened a few feet, the depth increased 3 or 4 feet, and the sides and bottom paved ■ with concrete. It appears to be 30 or 40 feet from the top of one bank to the top of the other. The concrete sides slant down at an angle of about 45 degrees. W-3 Main runs through thickly populated residential areas of the city of Sulphur and it was here the boy was drowned.
On the afternoon of this tragic accident, the Frensley child, whose nickname was “Chuckie”, returned home from school and told his mother he was going to play with Bobby Landry, a playmate who lived about a block away near a bridge across W-3 Main. Bobby met Chuckie at the bridge and pointed out two small dead catfish in the canal near the bank, about 40 feet from the bridge. The fish were near a ladder constructed of reinforcing wire mounted in the concrete side of the canal. Despite Bobby’s warning that his mother would be angry, Chuckie went down the ladder, caught the two dead fish and threw them *744 up on the bank. As Chuckle began to climb back up the ladder, he lost his hand-hold and fell back into the water, which was about S feet deep. Bobby ran and called his sister and his older brother. The older brother finally found Chuclcie under the water and carried him up the ladder. But efforts to revive Chuckie failed.
Plaintiff relies primarily on Saxton v. Plum Orchards, Inc., 215 La. 378, 40 So.2d 791 (1949). There the defendant corporation had developed a residential subdivision of about 100 houses. It had excavated dirt from a point near these residences, leaving an oblong pond of water about 200 feet long, by 30 feet wide, with steep banks. The pond contained an accumulation of boards, pieces of timber, logs and debris, as well as minnows, crayfish and frogs, which were attractive to children. Although the opinion states the excavation was originally dug for the purpose of draining the immediate area, obtaining fill dirt and providing sewerage, the court found the pond served no useful purpose whatever and actually was filled in shortly after the unfortunate accident occurred. A four year old child, who lived in the subdivision, drowned in this pond. The court found the pond was an attractive nuisance and quoted with approval from 152 A.L.R. 1263 the following essentials of the doctrine:
“ T. That the injured child was too young to understand and avoid the danger.
“ ‘2. That there was reason to anticipate the presence of such children, either because of some attraction on the premises, or because the danger was in some place where children had a right to be.
“ ‘3. That there was a strong likelihood of accident.
“ ‘4. That the danger was one other than those ordinarily encountered.
“ ‘5. That the precautions not taken were such as a reasonably prudent person would have taken under the circumstances.’ ”
As able counsel for the defendant has pointed out, the first obvious distinction between the Saxton case and the present one is that there the pond served no useful purpose whatsoever, whereas here, the canal was an essential part of a very necessary drainage system for the entire city of Sul-phur and vicinity. This criteria of balancing the utility of the hazard against the foreseeable harm to children, although not stressed in the Saxton case, is now well established in the law of attractive nuisance.
In Holland v. Vidrine, La.App., 133 So. 2d 809 (3rd Cir. 1961; writ denied) a child drowned in a stock pond on defendant’s farm. One of the determining factors for our holding the stock pond was not an attractive nuisance was the utility of the pond to its owner. We quoted with approval the essentials of an attractive nuisance from A.L.I. Restatement, Torts, Section 339. As amended in A.L.I. Restatement, 2d., Torts, Section 339, these are substantially the same as those quoted above from the Saxton case, except that in addition it is required:
“(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved.”
In the more recent case of Slaughter v. Gravity Drainage District No. 4, La.App., 145 So.2d 50 (3rd Cir. 1962), which involved facts very similar to the present case, except that the child was eleven years old, we stated the law as follows:
“In determining whether a body of water is an attractive nuisance in a particular case, many factors must be considered, such as the age of the child, his ability to understand and avoid dangers, whether the proprietor has reason to anticipate the presence of children, whether there was a strong likelihood of the accident and whether the danger was one other than those ordinarily *745 encountered. Other factors to be considered include whether the facility did or did not serve a necessary or useful purpose, what means could have been employed to avoid the danger, and whether the precautions taken were reasonable. See Burris v. City of New Orleans [La.App., 86 So.2d 549], supra.”
In Martin v. City of New Orleans, 98 So. 2d 559 (Orl.App.1957), two children, seven and nine years of age, drowned in a drainage canal in the city. The court sustained an exception on the grounds the canal was a governmental function, for which the city could not be sued in tort. But the decision also points out the utility of the canal as compared to the danger involved
In the Slaughter case, supra, we concluded the drainage canal was not an attractive nuisance. Our reasoning there applies equally to the present matter. We said:
“There, of course, are inherent dangers of drowning in every body of water, including a canal. A drainage district which constructs and maintains a canal as a part of its public function, however, does not become the insurer of the lives and safety of all children who came near the waterway. Where the canal is open and in full view of those who come near it, the facility itself serves as a warning of the dangers which are apparent especially to those who are of the age of discretion. Where the danger is not hidden or concealed and there are no unusual circumstances which render the facility peculiarly attractive to young children, we think there is no duty on the part of the drainage district to provide safeguards against persons falling into the excavation, such as fences or warning signs. Where those conditions exist the drainage district has the right to presume that for every child under the age of discretion, there is some one of mature judgment on whom rests the special duty and responsibility for the safety of the child. Also,-we feel that the construction of the canal with extremely steep inclines along its banks or sides alone does not constitute actionable negligence on the part of the drainage district.”
In oral argument before this court, plaintiffs’ able counsel emphasized the ladder as being particularly accessible, attractive and hazardous to children. The evidence shows such ladders were placed every 200 or 300 feet along the canal. Their purpose was to provide a way for defendant’s maintenance crews, and anyone who fell into the canal, to climb back' up the banks. When dry, the 45 degree angle of the concrete banks could possibly be climbed, but when wet and slippery, this would be very difficult. Hence, the ladders’ principal purpose was safety. Their elimination would undoubtedly create more danger than their presence. Here again, a balancing of their usefulness against the danger entailed to small children is the decisive factor in our finding they do not constitute an attractive nuisance.
Plaintiff also emphasizes the presence of the fish in the canal as being a particular attraction to children. This was one of the factors in the Saxton case. Of course, most all ponds, canals, ditches, etc. in Louisiana contain fish and fish are attractive to children. But this canal was no more attractive to children than other canals, ditches and ponds, of which there are literally thousands .in South Louisiana. Here again, the answer to plaintiffs’ argument is simply that the utility of this drainage canal to the .people of Sulphur and the immediate vicinity far outweighed the danger entailed to children.
A final argument by plaintiff is that the legislative act, authorizing this suit against the drainage district, waived its governmental immunity and it therefore stands in no better position than the private corporation which was defendant in Saxton v. Plum Orchards, Inc., supra. We think clearly this argument does not affect the outcome of this suit. Whether the drainage canal, *746 by constructing and maintaining this canal, was operating in a governmental capacity or not is immaterial in this litigation. This suit has been authorized by legislative act and the issue of attractive nuisance is the same, regardless of whether the canal was a governmental function.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs.
Affirmed.
On Application for-Rehearing.
En Banc. Rehearing denied.
TATE, J., absent.