GUIDRY, Judge.
Plaintiff, Maria D. Chaisson, appeals a judgment of the district court dismissing her suit against the City of Lafayette for damages she sustained in a fall into an unfenced coulee or concrete drainage ditch. We affirm.
FACTS
The facts in this case are not in dispute. On the evening of October 14, 1989, Maria D. Chaisson fell into the concrete coulee separating 301 and 311 W. University Avenue in the City of Lafayette and sustained personal injuries. Ms. Chaisson, a teacher from Canada, had been attending an open house at the Maison du Quebec located at 301 W. University. The building and property at 301 W. University was owned by J.J.D. Inc., an original defendant in this suit who, together with its insurer, had settled with plaintiff before trial.
Ms. Chaisson arrived for the open house at approximately 6:30 p.m. and parked in the lot at 311 W. University. She walked from her parked car through the lot onto W. University and proceeded to 301 W. University, where she entered the front door. She had done this on at least one prior occasion. Upon preparing to depart at approximately 9:30 p.m., Ms. Chaisson noticed a number of other departing guests exiting through a rear door. She inquired of her hostess if it was possible to reach the parking lot through the rear and was told she could. She departed through the rear door and found herself upon a small concrete landing with steps leading to the rear parking lot of 301 W. University. The only lighting in the area came from one relatively weak light bulb in a fixture at the top left hand corner of the door. Ms. Chaisson spotted her car in the unlighted parking lot at 311 W. University and, believing the two parking lots to be contiguous, started toward it. A few steps later, she walked into the coulee or concrete drainage ditch, fell to the bottom and sustained moderately severe injuries.
At trial, it was stipulated that in 1963, the City secured easements from the property owners bordering the coulee in order to concrete same and thereby improve drainage in the area. The easements granted the City the right to continuously maintain the canal. At that time, there was no plan to fence along the outer hanks of the coulee. In 1975, the City once again sought easements from the property owners bordering the canal, this time to fence the structure at City expense. At that time (1975), Dan Ritchey was the owner of the property at 311 W. University and was the lessee and agent for the property at 301 W. University, which was owned by J.J.D. Inc., whose officers were J.J. Davidson, Jr. and his sister-in-law, Gloria Babin Davidson. In a letter to Steve Glass, then right-of-way agent for the City, Ritchey declared his opposition to the proposed fencing of the coulee in the area between 301 and 311 W. University stating that: (1) parking lots had been constructed on both properties with their curbs atop the canal wall which would make erection of a fence infeasible; and, (2) there was “... really no need for the fence nor any place to install it”. A copy of the letter was forwarded to Davidson.
Neither Ritchey nor Davidson would sign a fencing easement for 301 and 311 W. University. Records do reveal that J.J. Davidson, Jr. and Gloria B. Davidson did sign easements for property adjoining 301 and 311 W. University on the south. At trial, Ritchey, who no longer owned the property at 311 W. University, testified that parking in the adjoining lots (301 and 311 W. University) was arranged so that cars parked perpendicular to the coulee with a portion of the front end overhanging the canal. He explained that the narrowness of the lots mandated such arrangement in order to maximize available parking space.
*310 The trial court, rendering judgment in favor of the City, found that the City had no custody or control over the canal and was under no legal obligation to construct a fence where the property owners refused to grant permission to do so.
On appeal, plaintiff argues that the trial court erred in finding the City did not have garde over the canal; the City had no duty to fence the canal; and, the adjacent property owners were 100% at fault in causing plaintiff’s injuries.
Under a strict liability theory, it is the defendant’s legal relationship with the property containing a defect that gives rise to the duty. Loescher v. Parr, 324 So.2d 441, 446 (La.1975). Under both negligence and strict liability theories, the absence of an unreasonably dangerous condition of the thing implies the absence of a duty on the part of the defendant. Oster v. DOTD, 582 So.2d 1285 (La.1991).
We have little difficulty in concluding that the City had custody or garde of the area occupied by the drainage canal and the trial court erred in concluding otherwise. Although the adjoining property owners owned the area occupied by the natural drainage ditch or coulee, the City, as a result of a servitude secured from the adjoining landowners to improve and maintain the canal, had custody or garde of the canal area. However, garde or custody standing alone does not give rise to liability under a strict liability theory. In addition, for recovery under both negligence and strict liability theories, the injured party must establish that the thing contained a defect which created an unreasonable risk of harm and that the defective condition caused the injury. In speaking to the unreasonable risk of harm criterion, the Supreme Court in Oster, supra, stated as follows:
... As we stated in Landry v. State of Louisiana and the Board of Levee Commissioners of the Orleans Levee District, 495 So.2d 1284 (La.1986):
“the unreasonable risk of harm criterion ... is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed by this court to symbolize the judicial process required by the civil code. Since Articles 2317 and 2322 are not detailed rules for all concrete cases, it becomes the interpreter’s duty to decide which risks are encompassed by the codal obligations from the standpoint of justice and social utility.” [Sistler v. Liberty Mutual Ins. Co.] 558 So.2d [1106] at 1112 [La.1990]. Reaching an intelligent and responsible decision of whether a risk is unreasonable involves consideration of moral, social, and economic values as well as the ideal of justice.
Id. at 1287 (quoting Entrevia v. Hood, 427 So.2d 1146 (La.1983)). Although courts, including this court, have described the unreasonable risk of harm criterion as requiring the court to balance the likelihood and magnitude of harm against the utility of the thing, the balancing test required by the unreasonable risk of harm criterion does not lend itself well to such neat, mathematical formulations. In addition to the likelihood and magnitude of the risk and the utility of the thing, the interpreter should consider a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiff’s conduct at the time of the accident.
There was no defect in the area occupied by the drainage canal which created an unreasonable risk of harm. Where a canal is open and in full view, the canal itself serves as a warning of apparent danger to persons. Our courts have consistently held that a governmental body does not owe a duty to the general public to place warning signs and/or fences along the banks of its drainage canals. Slaughter v. Gravity Drainage District No. 4, 145 So.2d 50 (La.App. 3rd Cir.1962), writ denied, 160 So.2d 762 (La.1962); Atwell v. City of Baton Rouge, 286 So.2d 783 (La.App. 1st Cir.1973), writ denied, 288 So.2d 648 (La.1974); Miles v. City-Parish Government, 253 So.2d 681 (La.App. 1st Cir.1971), writ denied, 255 So.2d 93 (La.1971), cert. denied, 405 U.S. 1066, 92 S.Ct. 1501, 31 L.Ed.2d 797 (1972); Bourque v. LeBlanc, 328 So.2d 413 (La.App. 3rd Cir.1976). However, in this *311 connection we observe that in the year 1975 the City attempted to secure authority to construct a fence along the banks of the canal from the adjoining landowners but was refused such permission by the owners of 301 and 311 W. University. Thus, any danger associated with the presence of the unfenced canal can be laid at the feet of the adjoining property owners. In our view, although the canal area did not contain a defect which created an unreasonable risk of injury, the adjoining properties which were used as parking lots for buildings open to the public, were defective and created an unreasonable risk of harm to persons on the premises in times of poor visibility. In addition to the owners refusing to allow the City to fence along the canal bank, the landowners neglected to adequately light the parking area so as to warn of the presence of the drainage canal. Our conclusion in this regard finds support in our Supreme Court’s decision in Socorro v. City of New Orleans, 579 So.2d 931 (La.1991).
In Socorro, plaintiff sustained severe injuries when he dove off the bulkhead at the end of Breakwater Drive in New Orleans, an area generally referred to as “The Point”, and struck a large block of rip rap (broken up pieces of paving material) lying on the lake bottom just a few feet below the murky waters of Lake Pontchartrain. Breakwater Drive, a public street, is actually built atop the crown of a breakwater constructed to protect New Orleans’ Municipal Yacht Harbor. By Acts 1906, Number 209, the State granted to the City of New Orleans the exclusive jurisdiction, administration and control over the specific area of Lake Pontchartrain where the City built the breakwater, Breakwater Drive and the Point.
Our Supreme Court, in affirming the exoneration of the State from liability in the Socorro case, pointed out that while the lake bottom remained in the garde of the State, the lake bottom was not the thing which caused Socorro’s injuries. Rather, it was the rip-rap which was in the custody of the City which was the injury causing object. See Socorro, supra, at 937-938. Analogizing Socorro to this case, although the City had garde of the canal, the injury-causing object was not the canal but rather, the dimly lighted, unfenced parking area in the custody and control of the landowners.
Accordingly, for the reasons stated, we find no basis upon which to subject the City of Lafayette to liability and affirm the judgment of the trial court. Plaintiff-ap-pellee is taxed with all costs of this appeal.
AFFIRMED.