HAMITER, Justice.
 

 Invoking the attractive nuisance doctrine, plaintiffs sued to recover damages for the loss of their four year old daughter whose lifeless body was found in a deep pool of water on defendant’s property, they alleging that the child’s drowning was due entirely to the negligence of defendant in creating and maintaining the pool which was alluring and attractive to children.
 

 Answering, defendant generally denied plaintiffs’ allegations, and it affirmatively showed as follows:
 

 “And now for further answer to the plaintiffs petition defendant avers that it is the owner of the house in which the plaintiffs lived and that there was a lake or pond on another portion of the property owned by the defendant and that the plaintiffs knew this fact and that if a death did occur as recited in the plaintiffs petition a fact which defendant denies, then the cause of the death and the resulting damages was caused by the failure of the plaintiffs to properly attend and guard their minor child, that such act on the part of the plaintiffs should be a bar to their recovery. This fact the defendant specially pleads.”
 

 There was judgment in the district court, after a trial of the merits, dismissing plaintiffs’ suit. On an appeal to the Court of Appeal that judgment was affirmed. The case is before us on a writ of certiorari granted on plaintiffs’ application.
 

 About the year 1942 the defendant, Plum Orchards, Inc., acquired several acres of land. lying immediately north of the Gen-tilly Plighway in the City of New Orleans, and it proceeded to develop the property as a subdivision, some one hundred houses later having been constructed there of which it built and owned approximately eighty.
 

 In the northern portion of the subdivision and well within its boundaries, defendant, during the latter part of 1943 or early in 1944, excavated a place for the three-fold purpose of draining the immediate area, of obtaining dirt for filling, and of providing sewerage. The excavation thereafter, by reason of rains and drainage, resulted in a large, somewhat oblong pool of water without any outlets, the length of which was approximately 200 feet. The width thereof ranged from 20 to 30 feet and the depth from 4 to 10 feet. It had abrupt or vertical, not gradually sloping, edges or banks. This pool, which was not fenced or otherwise isolated from the remainder of the subdivision, was very near to and clearly visible from Pecan Street, on which numerous houses fronted, and Dreux Avenue where a grocery store was operated. It contained
 
 *383
 
 marine life such as crayfish, minnows and frogs.
 

 In December, 1945, plaintiffs, Mr. and Mrs. Elzy Saxton, rented from defendant, under a verbal monthly lease, house No. 4754 Pecan Street; and they, with their four children whose ages ranged from two to six years, moved into the premises. Directly across Pecan Street from their home, in a house facing it, lived Mr. and Mrs. Edward Gonsoulin and their nine children. The grocery store operated on Dreux Avenue was some 200 feet away. Also across Pecan street, a distance of about 150 feet, was the above described pool, it being situated 40 feet to the rear of the Gonsoulin dwelling and 10 feet to the side of the grocery store.
 

 Shortly before noon on Sunday, March 24, 1946, Mrs. Saxton, after having played with her children in front of her home, prepared a light lunch. A few minutes later she called the children, and all of them responded except Juanita, her four year old daughter. Immediately, she and others commenced searching throughout the subdivision for the child, and, following an elapse of about two hours, a young neighbor (Vincent Ciccio) located her lying in the pool of water behind the Gonsoulin house at a point estimated to be from three to seven feet from the bank. Thereupon, Edward Gonsoulin went into the water (to a depth of five feet), brought the body out, and began administering artificial respiration. He pumped a small quantity of water from her system (according to Ciccio and Gonsoulin), but he did not succeed in reviving her.
 

 While the body was still lying near the water’s edge wrapped in a blanket, a photographer employed by a New Orleans newspaper arrived on the scene and made several photographs of the pool. These disclose (they were identified and offered in evidence) no logs or debris on the surface of the water at the spot where the child was found. But a few feet away, the pictures show, there was a sizable accumulation of short boards, sticks and small pieces of timber which extended from the bank almost across the water. The same condition obtained at several other points in the pool.
 

 Subsequent to the occurrence of the unfortunate accident defendant, according to the testimony of one of its officers, filled the pool with dirt.
 

 In this court defense counsel called attention to the fact that there were no eyewitnesses to the accident and that plaintiffs have not offered any direct proof of death of the child by drowning. They state in their brief here: “There is a possibility that she could have been pushed or thrown into the pond by a third party.” This point apparently was not raised in the Court of Appeal, for we find no mention of it in counsel’s brief filed there or in' the written opinion of that court. Be that as it may a strong inference" arises from the circumstantial evidence that the child walked or
 
 *385
 
 fell into the pool and that her death resulted solely from drowning. The body was found in the pool; the artificial respiration administered to it produced some water; and no one was seen at or near the pool during the two hour period in which the child was missing. And since this inference has not been overcome or rebutted it will be accepted as establishing the manner and cause of death. Siracusa v. Prudential Insurance Company, 211 La. 1066, 31 So.2d 213; 17 Corpus Juris verbo Death, §§ 166 and 176; 25 C.J.S.', Death, §§ 80 and 87.
 

 Without merit also is the affirmative defense that the death, together with the resulting damages, was caused by the failure of plaintiffs to properly attend and guard their minor daughter. The evidence abundantly discloses that the parents often cautioned all of their children about playing near the pool, and that they did everything reasonably required of them to prevent the happening of the accident.
 

 This brings us to the important question of whether the attractive nuisance doctrine is applicable.
 

 With reference to the doctrine generally it is well and ably stated in 38 American Jurisprudence verbo Negligence, Section 142, that:
 

 “The attractive nuisance doctrine or, as it is sometimes called, the ‘turntable doctrine’ is a subject upon which there has been no small amount of confusion and diversity of opinion. There has been a difference of opinion not only as to whether the doctrine should be recognized, but also, in jurisdictions where it has been accepted, as to the conditions under which it is applicable. While the doctrine has been variously stated, courts which accept it generally are in substantial accord with the proposition that one who maintains upon his premises a condition, instrumentality, machine, or other agency which is dangerous to children of tender years by reason of their inability to appreciate the peril therein, and which may reasonably be expected to attract children of tender years to the premises, is under a duty to exercise reasonable care to protect them against the dangers of the attraction. Within the limitations hereinafter considered, the doctrine is for the benefit of a meddling, as well as of a trespassing, child. The result of such doctrine is that one is negligent in maintaining an agency which he knows, or reasonably should know, to be dangerous to children of tender years, at a place where he knows, or reasonably should know, children of tender years are likely to resort, or to which they are likely to be attracted by the agency, unless he exercises ordinary care for the protection of such indiscreet and youthful persons.”
 

 The limitations referred to in that general statement include the following found in Section 145 of the same authority:
 

 “The foundation of liability for negligence is knowledge — or what is deemed in
 
 *387
 
 law to be the same: opportunity by the exercise of reasonable diligence to acquire knowledge — of the peril which subsequently results in injury; Consistent with such general principle is the rule applied in attractive nuisance cases that the defendant is not liable unless he knew, or reasonably ought to have known, that the structure or instrumentality was alluring to children and endangered them. One of the essential conditions of liability under the doctrine of attractive nuisance is that there must have been ground for anticipating the presence of the injured child, since, unless the presence of the child is reasonably to be anticipated, the duty of taking precautions for its safety does not arise. ' The owners of land are not required in using it for legitimate purposes to guard against every possible danger to children. To children whose presence upon the premises cannot reasonably be anticipated, they owe ■ no duty to keep their land free from dangerous conditions. Moreover, to authorize a recovery it must be shown that the defendant knew, or ought to have known, that the child would make use of the instrumentality, and provided no guards or protections from the peril to which it was exposed, although he might reasonably have done so.”
 

 In the annotation given on page 1263 of Volume 152 of the American Law Reports, it is said that to make out a case under the attractive nuisance doctrine there must appear:
 

 “1. That the injured child was too young to understand and avoid the danger.
 

 “2. That there was reason to anticipate the presence of such children, either because of some attraction on the premises, or because the danger was in some place where children had a right to be.
 

 “3. That there was a strong likelihood of accident.
 

 “4. That the danger was one other than those ordinarily encountered.
 

 “5. That the precautions not taken were such as a reasonably prudent person would have taken under the circumstances.”
 

 Further, with reference to the doctrine generally the following observation is made in the annotation on page 224 of Volume 36 of the American Law Reports to-wit:
 

 “The weight of authority is to the effect that the attractive-nuisance doctrine does not apply to ponds, — at least, where there is no unusual danger.”
 

 The courts of Louisiana, as the jurisprudence discloses, have recognized and accepted the attractive nuisance doctrine, although perhaps in most of the cases in which the doctrine was invoked it, because of the peculiar factual situations involved, was not applied. Jackson v. Texas Company, 143 La. 21, 78 So. 137, L.R.A.1918D, 150; Fincher v. Chicago R. I. & P. Railroad Company, 143 La. 164, 78 So. 433; Tomlinson v. Vicksburg S. & P. Railroad Company, 143 La. 641, 79 So. 174; Peters v.
 
 *389
 
 Pearce et al, 146 La. 902, 84 So. 198; Friedman’s Estate v. Texas and Pacific Railroad Company, 209 La. 540, 25 So.2d 88, 163 A.L.R. 1228; McKenna v. City of Shreveport, Second Circuit, 16 La.App. 234, 133 So. 524; Peters v. Town of Ruston Second Circuit, La.App., 167 So. 491.
 

 The following comment in the Jackson case, supra, [143 La. 21, 78 So. 139], clearly evidences a recognition and an acceptance of the doctrine:
 

 “The counsel for defendant cites authority to the effect that it is not the duty of an occupier of land to exercise care to make it safe for infant children who come upon it without invitation, and merely by sufferance, which is sound enough doctrine when properly applied, but it has no application to a case where the occupier has taken no steps to inform the public of his occupancy, but, having established something which is at once attractive and dangerous to young children upon land which has all the appearance of a public highway and is so used by the public, including the children, fails either to give notice that the place is not open to the public, or to take the proper precautions to protect the public, and the children, against the danger which he has there created.”
 

 Interesting, and certainly relevant here, is the Fincher case, supra, in which damages were disallowed to the parents of a four year old daughter who had drowned in a pond located on defendant’s property. In reaching its conclusion this court reasoned [143 La. 164, 78 So. 434] :
 

 “There is really no dispute as to the facts, the question being as to whether under the foregoing circumstances the turntable o? attractive appliance doctrine is applicable.
 

 “Everybody knows, and several witnesses in this case testify, that a pool of water is attractive to children; but, for the application of said doctrine, it does not suffice that the thing from which the injury has resulted was in itself attractive or, in other words, was such that the instincts of children would prompt them to meddle, of play with or in it, but it must be so situated as to lure or attract children from the safe place where they have a right and are likely to be, and induce them to enter the premises where the attraction is in order to meddle or play with or in it, and the danger of its so alluring children must be so obvious that a due regard for the safety of the children would suggest to a man of ordinary prudence and necessity of taking precautions for their protection. * * *
 

 “True, in this case, this pool was not very far from the depot, and not very far from the street, but it was on the other side of the railroad tracks, and down an embankment, not within sight from the street, nor until the first track of the railroad had been crossed. Not.accessible, or
 
 *391
 
 even visible, therefore, to children except by going upon the railroad tracks, a place certainly where children had absolutely no right to be, where they would be incomparably in greater danger than when within sight of, or even access to, a pool of water.
 

 “In this case the child could not have been attracted by this pool until after she had become a trespasser.”
 

 What makes that decision particularly appropriate here is the fact that in such case, as our examination of the briefs discloses, the defendants urged the court (just as in this case) to apply the majority rule that ponds are not to be classed with turntables and that the owner of the property on which a pond is situated is under no obligation to keep the premises guarded against trespassing children. But the court refused to apply that rule, basing the decision on the fact that the pond was rather inaccessible and isolated, that is so located that children could not have been attracted by it until after they had become trespassers on another portion of defendant’s property. The inference resulting is that under certain circumstances the attractive nuisance doctrine can be applicable to a pond.
 

 In the Tomlinson case, supra [143 La. 641, 79 So. 175], it is said:
 

 “ * * * The doctrine of responsibility for having on one’s premises an inviting or attractive danger to children must be — and we think it has been — confined to cases where the dangerous agency is so obviously tempting to children that the owner is guilty of negligence for failing to observe and guard against the temptation and danger. * * * ”
 

 An almost identical comment is found in Peters v. Pearce, supra.
 

 In the light of the above stated principles of law we consider now the peculiar facts and circumstances of the instant case.
 

 At the time of the drowning plaintiffs’ daughter was only four years old. It can not be gainsaid that a child of that tender age is without the ability to appreciate the peril attending a pool of water such as that in which her body was found.
 

 But was this pool unusually attractive to and dangerous for children? Was there a strong likelihood of an accident? Could the presence of children be reasonably anticipated? Did defendant fail to take precautions for the protection of children such as a reasonably prudent person would have taken under the circumstances ? For the attractive nuisance doctrine to be applicable here all of these questions, Which are interrelated and may be discussed together, must be answered in the affirmative. We think that they can be.
 

 A pool of water naturally attracts children. Fincher v. Chicago
 
 R.
 
 I. & P. Rail
 
 *393
 
 road Company, supra. The instant pool, undoubtedly, was unusually attractive and alluring to children in view of of its contents and location. In it was a large quantity of debris, consisting of small timbers, sticks and short pieces of boards, — of the kind with which children enjoy playing, using them as boats. Additionally, it contained crayfish, minnows and frogs, — marine life that invariably attracts childish interest. And the pool, besides being clearly visible from the nearby streets and dwellings, was readily accessible. It was not fenced off in any manner; in fact, no fences separated the houses in that vicinity.
 

 Then too there were numerous children continuously within a short distance of the pool. In plaintiffs’ home lived four (150 feet away); the ’Gonsoulin’s had nine (40 feet away); and the grocery store (10 feet away) was often visited by young customers. According to defendant’s manager not less than 20 children resided in the area. With this knowledge, and in view of the pool’s attractiveness, visibility and accessibility, defendant could reasonably anticipate children’s playing at and near the water.
 

 That the pool was unusually dangerous and that there was a strong likelihood of an accident can not be denied. Its banks did not slope gradually' — they were abrupt, vertical; and immediately beside them the water had a depth of at least four feet. At the deepest part of the pool it stood near 10 feet. While playing with the marine life, or attempting to use the accumulated debris as boats, rafts, or a walkway, a child of tender age very easily could slip or fall into the water with disastrous results.
 

 A reasonably prudent person, under the circumstances shown above, would have taken precautions for the protection of children from the obvious danger. If maintenance of the pool was desired defendant could have fenced it adequately without too large an expense. However, the eliminating of the pool entirely long before the accident, just as was ultimately done, would have been more appropriate for it served no useful purpose. After becoming filled to capacity with water, it was useless for drainage; besides, according to the record, large drainage canals existed along the north, west and east boundaries of the subdivision. Defendant did nothing to provide the needed protection.
 

 Defense counsel rely largely on the decisions in McKenna v. City of Shreveport and Peters v. Town of Ruston, both supra. On a number of grounds those cases are distinguishable, some of which are that the children involved therein were not of the tender age enjoyed by the child here, and the respective ponds were not unusually attractive and dangerous to children as was the instant pool of water.
 

 For the loss of companionship, love, comfort and anticipated aid of their
 
 *395
 
 daughter and for shock and mental suffering plaintiffs pray for judgment in the total sum of $12,000. Decedent, according to the evidence, was a bright, healthy and obedient child, and no -doubt her passing was a distinct loss to and was keenly felt by her parents. For that loss no amount of money •can adequately compensate the parents. ■Considering the child’s age, along with the mentioned circumstances, however, we are of the opinion that for the purpose of this decision an award of $6000 to both parents is reasonable and proper. -Additionally, the father is entitled to recover the funeral expenses (for which he prayed), proved to be $411.50.
 

 For the reasons assigned the judgments of the district court and the Court of Appeal are reversed and set aside, and there is now judgment in favor of both plaintiffs and against defendant in the amount of $6000. There is further judgment in favor of plaintiff Elzy S. Saxton and against defendant for the additional sum of $411.50. Each amount shall bear legal interest from 'judicial demand until paid, and defendant shall pay the costs of both courts.
 

 O’NIELL, C. J., takes no part.