133 So.2d 809 (1961)
Dave HOLLAND et ux., Plaintiffs-Appellants,
v.
Ertheon VIDRINE et al., Defendants-Appellees.
No. 313.
Court of Appeal of Louisiana, Third Circuit.
September 20, 1961.
Rehearing Denied October 11, 1961.
Certiorari Denied November 29, 1961.
Daniel J. McGee, Mamou, Collings & Hunt, by E.C. Hunt, Jr., Lake Charles, for plaintiff-appellant.
Felix A. DeJean, Jr., Opelousas, J. Nilas Young, Eunice, for defendant-appellee.
Before TATE, HOOD, and CULPEPPER, JJ.
TATE, Judge.
Plaintiff Holland and his wife bring this action to recover for the loss of their six year old son, Alvin Ray, who on May 3, 1959 was drowned in a pond situated on the land of the defendant Vidrine. Vidrine and his liability insurer are made defendants. The plaintiffs appeal from judgment dismissing their suit after trial of the merits.
The theory of the plaintiffs' suit is that their son's tragic death by drowning resulted from the negligence of the defendant Vidrine in building and maintaining an unusually dangerous farm pond on his land, readily accessible to young children, whose presence in the area he knew of and should reasonably have anticipated, without his having also provided adequate safeguards or protection for the obvious peril to children so created and maintained by him. In short, the plaintiff invokes the attractive nuisance doctrine.
In summarizing this doctrine and its limitations, the Louisiana Supreme Court quoted favorably from a treatise source, stating in Saxton v. Plum Orchards, 215 La. 378, 40 So.2d 791, 794, its most recent expression on the subject: "`* * * one who maintains upon his premises a condition, instrumentality, machine, or other agency which is dangerous to children of tender years by reason of their inability to appreciate the peril therein, and which may reasonably be expected to attract children of tender years to the premises, is under a duty to exercise reasonable care to protect them against the dangers of the attraction. * * * The owners of land are not required in using it for legitimate purposes to guard against every possible danger to children. To children whose presence upon the premises cannot reasonably be anticipated, they owe no duty to keep their land free from dangerous conditions.'" See also Comment, "The Attractive Nuisance in Louisiana", *810 10 La.L.Rev. 469 (1960); Comment, "Attractive Nuisances in Louisiana", 11 Tul.L.Rev. 468 (1937); Note, "Occupier's Liability to Trespassing Children", 21 La. L.Rev. 853 (1961).
The facts show that the stock pond in which the plaintiffs' little boy drowned was maintained by the defendant Vidrine upon his 560-acre rice and cattle farm, which was situated partly within the southern corporate limits of Mamou, a municipality of approximately 2500 in population. The northernmost edge of this farm bordered the South Street of Mamou, from which it was separated by a sevenstrand barbed-wire fence enclosing the Vidrine acreage lying south of this roadway. The other boundaries of the Vidrine's property were likewise enclosed by wire fences.
The pond had been construed by Vidrine approximately seven months before the accident. It was situated within his lands, but 933 feet south of South Street in Mamou. The pond was adjacent to an abandoned railroad right of way which was elevated about six feet above the surrounding lands and which served as a private roadway leading south into the interior of the defendant landowner's farm. Entrance onto this roadway and into the Vidrine farm was inhibited by a five-strand wire gate at the north (or South Street) end of the abandoned right of way. The gate was always kept padlockedalthough, of course, children or adults could traverse it by squeezing under or between the wire strands. Within a block of this gate lived many families and approximately twenty small children.
The pond was rectangular, with dimensions of approximately 60 by 80 feet, and it was mostly from 7-8 feet deep, with abrupt vertical banks on three sides, but with a slope from the northern edge, so that if cattle fell from the steep sides they could swim to and climb out the sloped end. The vertical banks, of course, made it almost impossible for a small child who fell in from them to climb outand this is what happened on the afternoon of the tragic death of young Alvin Ray Holland, when in the sight of his young cousins he fell in from the side-bank where the water was about seven feet deep and was unable to save himself from drowning or be saved by the other young children.
The evidence further indicates: There are numerous stock ponds in the rural areas of Louisiana needed to water cattle. Most stock ponds are built with all four sides sloping to some degree, although some are built as the present was with three sides steep. Farmers commonly prefer to make three of the sides at least slightly steeper, however, in order to discourage cattle from wading into and dirtying the water; but at least one sloping side is always needed to afford the cattle access to the water in dryer spells when the water level recedes. Very few stock ponds are fenced; although a few farmers prefer to do so on at least three sides, again to discourage the cattle from wading.
By their extremely able brief and argument, counsel for the bereaved parents argue strongly that the attractive nuisance doctrine applies because the pond was obviously attractive to young children, because it was situated on a farm adjacent to a neighborhood in which many young children lived, because (having steep abrupt sides) it created an obvious hazard to the lives of young children, and because the defendant Vidrine knew that children frequently trespassed upon his property but nevertheless failed (a) to fence the pond or (b) to lessen the danger by sloping all four sides so that children who fell in could climb out, or even (c) to locate the pond at another place on his premises not so easily accessible by the abandoned right of way (even though this other location might occasion the additional expense of pumping, being without the advantage of natural drainage possessed by the present site).
Plaintiffs rely strongly upon Saxton v. Plum Orchards, 215 La. 378, 40 So.2d 791, *811 792, probably the leading Louisiana case on the attractive nuisance doctrine. In this case the parents recovered for the loss of their child drowned in a large pool which had vertical banks. The pool had formerly been used for drainage purposes but no longer served any useful purpose; it nevertheless was left, unfilled and unfenced, within a subdivision and easily accessible to many young children whose homes were within 150 feet of the hazard.
In holding the landowner liable, after a full discussion of the attractive nuisance doctrine, our Supreme Court stated that for such doctrine to be applicable all of the following "interrelated" questions "must be answered in the affirmative", namely, 40 So. 2d 796:
"[1] * * * was this pool unusually attractive to and dangerous for children?
"[2] Was there a strong likelihood of an accident?
"[3] Could the presence of children be reasonably anticipated?
"[4] Did defendant fail to take precautions for the protection of children such as a reasonably prudent person would have taken under the circumstances?"
The criteria of liability here enunciated, together with the emphasis upon the complete uselessness of the hazard maintained in the premises as contrasted with the large exposure of children to the hazard, indicate that our Supreme Court has adopted essentially the rule of liability enunciated by Section 339 of the Restatement of Torts (American Law Institute; 1934), which provides as follows:
"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if
"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and
"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."[1]
Applying the noted criterial of liability to the facts of the present case, we believe that the trial court correctly held that the defendants were not liable for the tragic death of the plaintiffs' beloved young child.
Although the pond as created contained abrupt banks which constituted a hazard to young children, nevertheless it was situated out of sight and far from the public road and from places where young children lived or congregated. While there was evidence that young children and others frequently trespassed across the defendant Vidrine's fences near the public roads to go blackberrying and crawfishing along a shallow drainage canal on his land, there is no evidence that trespassers frequented the area *812 of the farm pond in the interior of the Vidrine farm, nor even that ever before the day of the tragedy children had ever been seen in the immediate vicinity of the pond.
For instance, the decedent's 15-year-old aunt, who had for sometime lived a halfblock from the Vidrine gate and who had taken Alvin Ray and some six other small children to the spoil bank near the pond on the morning of the accident (following which in the afternoon, Alvin Ray and his young cousins had escaped from the adults, as small boys will, in order to return to the scene of the attraction, resulting in the tragedy), had never seen the pond before the morning of the accident, although she admitted trespassing two or three times a summer month, with other children, to pick blackberries and to fish crawfish along the edges of the Vidrine farm. Tr. 87, 90, 98. To the same effect is the testimony of a young cousin of the decedent's. Tr. 106. Likewise, the presence of the pond was known of neither by the decedent's mother (Tr. 246) nor by his aunt (Tr. 224), both of whom had been raised in the area and both of whom, though now living out of town, regularly visited with their several small children their own mother's home, which was a half block from the gate to the Vidrine property.
Children and others had frequently trespassed on the Vidrine property to swim and fish in a lake which prior to 1943 had occupied the field adjacent to the southern edge of Mamou; but this lake had been pumped in 1943 in order to make a rice field. The evidence indicates that, consistently since then, the Vidrine property has been posted against trespassers and entirely fenced, and that Vidrine and his tenants, under his orders, have consistently notified trespassers to leave when discovered, usually in the areas of his farm adjacent to the public roads.
Weighing all the circumstances of the present case, including the utility of the farm pond[2], we do not think that the defendant Vidrine had sufficient reason to realize that any substantial hazard to young children was created by the pond in the interior of his property such as would cause a reasonably prudent landowner to take precautions against any strong likelihood of accident. Vidrine is therefore not liable to the plaintiffs for the tragic death of their young son.
Accordingly, the judgment dismissing the plaintiffs' suit is
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] Actually, as an eminent tort authority has commented, the attractive nuisance doctrine is "sadly miscalled" since "* * * The basis of the liability * * * [is] considered to be nothing more than the foreseability of harm to the child, and the considerations of common humanity and social policy which, in other negligence cases, operate to bring about a balancing of the conflicting interests, and to curtail to some reasonable extent the defendant's privilege to act as he sees fit without taking care for the protection of others. In other words, child trespasser law is merely ordinary negligence law. * * *" Prosser, "Trespassing Children", 47 Calif.L.Rev. 427, 1959, 431, 432.
[2] As Dean Prosser commented in his recent article, "Trespassing Children" cited footnote 1 above, extensively summarizing the reported cases concerning the attractive nuisance doctrine, at 47 Calif.L.Rev. 463-464: "The utility of the dangerous condition, not only to the possessor, but also the community, has received frequent mention in cases of trespassing children. * * * Where the value of [the dangerous condition] * * * has been found to outweigh the unavoidable danger to children which they entail, it has led to a denial of liability, as a matter of law. On the other hand, where there is such a thing as an abandoned pit which has filled with water, and is of no use to anyone, there may be nothing to outweigh the risk of harm to the child."

See also the "comment" to clause (d) of the above-quoted Section 339, Restatement of Torts:
"In determining whether a particular condition maintained by a possessor upon land which he knows to be subject to the trespasses of children involves an unreasonable risk to them, the comparison of the recognizable risk to the children, with the utility to the possessor of maintaining the condition, is of peculiar importance. The public interest in the possessor's free use of his land for his own purposes is of great importance. A particular condition is, therefore, regarded as not involving unreasonable risk to trespassing children unless it involves a grave risk to them which would be obviated without any serious interference with the possessor's legitimate use of his land. * * *"