HOOD, Judge.
This is an action for damages in which the plaintiff alleges that his minor son, Archie S. Hebert, Jr., sustained severe burns to his leg as the result of the negligence of Ashton J. Elmer in maintaining an attractive nuisance, that is, an unguarded fire with flammable liquids near it, on the latter’s property. The suit was instituted by Archie E. Hebert, Sr., individually and as administrator of the estate of his injured son, against Elmer’s public liability insurer. After trial, judgment was rendered in favor of plaintiff. Defendant has appealed.
The evidence shows that at about noon on May 7, 1961, plaintiff’s five-year-old son sustained second and third degree burns to the medial portion of his left leg, between the knee and the ankle. The burns were thermal or heat burns, apparently caused by fire.
On that day defendant’s insured, Elmer,, was engaged in cleaning shrubbery from a tract of land which he owned, and he was-disposing of the cut shrubbery by burning it. Plaintiff contends that his son was-burned in one of the fires which had been started by Elmer, that the fires were not properly guarded, that flammable liquids-were left near such fires, and that the child poured or spilled some of the flammable liquid on his clothes and thereafter came in contact with the fires.
The tract of land owned by Elmer and' on which the clearing operations were being conducted is located near the City of Lake Charles on the north side of a short, dead-end street known as Elmer’s Lane. It contains approximately one and one-half acres, having a frontage of 208 feet on Elmer’s Lane by a depth of 310 feet. A drainage ditch runs generally east and west across the center of this tract of land. Elmer had been engaged in clearing shrubbery off the property for several weeks, and by May 71 1961, he had completely cleared all that portion of the property located south of the drainage ditch and a large portion of the area located north of that ditch. In these clearing operations, and prior to the above-mentioned date, he had frequently burned shrubbery at various places on the property.
On Sunday morning, May 7, 1961, Elmer started two fires in the extreme northeast corner of his property for the purpose of burning shrubbery which had been, and was being, cut from that portion of his land. In getting these fires started early that morning he used a mixture of diesel fuel and some old crankcase oil which had been drained out of automobiles. The mixture contained about four or five parts of waste oil to one part of diesel fuel, and the resulting mixture was a very black and oily fluid. This liquid was taken to the *94 property in a five-gallon can which was equipped with a cover and a spout. In starting the fire Elmer transferred some of this liquid from the five-gallon can into a half-gallon container, and he then carried the smaller container to the place where the fire was to be started. After the fires had been started, the five-gallon can was set on the ground at a point in the north half of the property, 75 to 90 feet southwest of the fires, almost directly in line between the fires and a point on the drainage ditch where Elmer intended to install a culvert. The smaller half-gallon can was placed on or near the five-gallon can, and neither of these containers were used any more that day after the fires were started.
Plaintiff owned and resided on a one-half acre tract of land which was located at the west end of Elmer’s Lane. A portion of plaintiff’s property abutted the southwest corner of the Elmer tract, the last-mentioned tract being entirely enclosed by a fence. A metal gate leading from plaintiff’s residence property into the Elmer tract was located at or near the southwest corner of Elmer’s land. Since the two fires which Elmer started on May 7, 1961, were located in the extreme northeastern part of his land, it is apparent that a person entering the Elmer tract from the gate in the southwest corner of such tract would have to traverse almost the full 310-foot depth of that property, from the southwest corner to the northeast corner, in order to get to the fires. In traversing that distance he also would have to cross the drainage ditch, which at that time was dry.
Plaintiff is married to Elmer’s daughter, and the child is Elmer’s grandson. A close family relationship exists between these parties, and prior to the alleged accident the child frequently visited with his grandfather.
Between 9:00 and 10:00 a. m. on the date of the alleged accident, after Elmer had started the two fires above described, he was joined by plaintiff and by another son-in-law, Eulice Romero, who came to this tract in order to assist Elmer in the clearing operations. Shortly after the two younger men got there, Elmer and plaintiff (the injured boy’s father) began working on the installation of a concrete culvert in the drainage ditch which ran across the center of the property, using a tractor for that purpose, and they were still working on this culvert when the accident is alleged to have occurred. At the request of Elmer, however, Romero continued to clear brush from the property and to carry it to the fires to be burned. Romero worked continuously from about 10:00 that morning until after the accident is alleged to have occurred in the immediate vicinity of the two fires which were located at the northeast corner of this property. His testimony is uncontradicted to the effect that he carried brush first to one fire and then to the other, that he was always in the immediate vicinity of both fires, which were actually only a few feet apart, and that he did not have his back turned to either fire at any time except for periods not exceeding two minutes at any one time when he may have been picking up additional shrubbery to carry back to the place where it was being burned. There was nothing to obstruct the view of the men who were working there or to prevent them from seeing a child at any place on the Elmer tract.
No one saw the child at or near the fires at any time that day. The only evidence of any kind to the effect that the child had been on the Elmer tract at all was the testimony of Mrs. Elmer, the child’s grandmother, who drove up to the Hebert residence about noon and who testified that as she drove up she saw the child walking from the Elmer property toward the gate leading to the Hebert residence. At the time she first saw him she testified that he was in the south portion of that tract approximately 50 feet from plaintiff’s house, and that he was walking toward the gate. By the time she got out of her car she states that the child was at the car, was crying and upon inspection she determined at that time that his leg had been burned. The men *95 who were working on that land, including Elmer, the child’s father and Romero, did not see the child on the Elmer property, and they did not know that the child had received an injury of any kind until informed of that fact a few minutes after it was discovered by the grandmother.
At the time the child’s leg was burned, he was wearing blue jeans which covered both legs completely from the hips to his ankles. Although the boy’s left leg was severely burned, the evidence shows that neither the blue jeans nor any other part of his clothes were burned at all. His grandmother testified that when she first saw the child his clothes, including his shirt, blue jeans, socks and shoes, were “completely saturated” with an “oil looking” fluid which looked like “old waste oil,” and that even his shoes were filled with it, the left shoe being filled more than the right. Although she carried the child into the house, she could not remember getting any of this oily substance on her clothes. The mother of the child testified that the blue jeans were “wetlike,” but that she didn’t see any oil on them at all. Plaintiff also testified that he did not see any oil on the boy’s leg or clothes. The father and mother both testified that upon inspecting the boy’s clothes they detected that some “lint” or “fuzz” appeared to be missing from the blue jeans, but that there was no evidence of any burned places on the child’s clothes at all.
On these facts the trial judge concluded that “these two fires were the only fires in the area at that time,” and that although there was no direct evidence of the boy having been burned by such fires, “the circumstances surrounding the happening of this event excludes every reasonable hypothesis other than the fact that the boy was burned at one of these two fires upon the property of Mr. Elmer.” We are unable to agree with that conclusion. While it is true that the evidence shows there were no other fires on the Elmer tract, it does not exclude the possibility that there may have been fires at other places in that area. The boy’s mother testified that she maintained a trash burner at their home and that the boy helped to “burn the trash on-occasions.” Although her testimony does not indicate whether trash was being burned' on that day, the record does not exclude the reasonable possibility that the child could have received the burn at this trash burner or at some other fire not on the Elmer tract which might have been started by himself or by someone else. In our opinion, therefore, the evidence does not exclude every reasonable hypothesis other than the fact that the child received the burn on the Elmer tract.
In addition to the observations already made, we add that it seems inconceivable to us that the child could have entered the Elmer property, traversed the full depth of that property, crossed the drainage ditch within a few feet of where his father and grandfather were working, then proceeded to the fuel cans located north of the ditch, spilled fuel from the large five-gallon-can on his clothes, walked a distance of 75 to 90 feet to the fires where Romero was working, received the burns at those fires- and thereafter traversed almost the entire distance back to the Hebert residence without any one of the three men who were working on the Elmer tract observing him. Also, it seems to us that the child’s clothes would have ignited and burned if they actually had been saturated with fuel oil before he came in contact with the fire. The fact that the clothes did not burn indicates that the dampness which Mrs. Hebert detected was from water, and not from a highly flammable fuel as contended by plaintiff. In our opinion, therefore, plaintiff has failed to establish that the child was burned by the fires which had been started by Elmer.
Assuming, however, that the child did sustain the burn from the fires which were being maintained on the Elmer property, we cannot agree with plaintiff in his contention that Elmer maintained an attractive nuisance by allowing an “un *96 guarded” fire to burn on his premises with a flammable liquid near that fire.
As stated in Saxton v. Plum Orchards, Inc., 215 La. 378, 40 So.2d 791:
“ ‘ * * * one who maintains upon his premises a condition, instrumentality, machine, or other agency which is dangerous to children of tender years by reason of their inability to appreciate the peril therein, and which may reasonably be expected to attract children of tender years to the premises, is under a duty to exercise reasonable care to protect them against the dangers of the attraction. Within the limitations hereinafter considered, the doctrine is for the benefit of a meddling, as well as of a trespassing, child. The result of such doctrine is that one is negligent in maintaining an agency which he knows, or reasonably should know, to be dangerous to children of tender years, at a place where he knows, or reasonably should know, children of tender years are likely to resort, or to which they are likely to be attracted by the agency, unless he exercises ordinary care for the protection of such indiscreet and youthful persons.’ ”
In the instant suit we have already pointed out that Mr. Elmer and the child’s father, although working on the drainage ditch, remained in the immediate vicinity of the fires while they were burning. In addition thereto, Elmer specifically arranged for his son-in-law, Romero, to “take care of” the fire while Elmer and plaintiff were working on the other project a few feet farther away. Romero was 39 years of age at that time. Pie was a responsible person, a son-in-law of Elmer and an uncle of the injured child. Because of the strong family ties which existed among these people, Romero, as well as plaintiff and Elmer, had a genuine concern for the safety and welfare of plaintiff’s children. Under these circumstances we think Elmer was justified in entrusting to Romero the safety of any young children who may have come on the property, and particularly the safety of plaintiff’s children. Assuming, therefore, that the maintenance of fires and the keeping of flammable fluids on a tract of land under the facts and circumstances presented here would constitute the maintenance of an attractive nuisance if left unguarded, we think the evidence here shows that Elmer exercised reasonable care in guarding the fires and in protecting children of tender years from injury from such fires.
In view of the conclusions which we have reached, it is not necessary for us to consider and determine whether the maintenance of fires on a tract of land, and the keeping of flammable liquids 75 to 90 feet from those fires, under the facts and circumstances presented here, constitutes the maintenance of an attractive nuisance. We accordingly express no opinion as to that issue.
For the reasons herein assigned, the judgment appealed from is reversed, and judgment accordingly is rendered in favor of defendant and against plaintiff, rejecting plaintiff’s demands at his costs. The costs of this appeal are assessed to plaintiff-appellee.
Reversed.