209 So.2d 497 (1968)
Joseph R. DUXWORTH
v.
PAT CAFFEY CONTRACTOR, INC.
No. 2968.
Court of Appeal of Louisiana, Fourth Circuit.
April 8, 1968.
Rehearing Denied May 6, 1968.
Writ Refused June 4, 1968.
*498 George L. Nassar and John A. Salvaggio, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John C. Combe, Jr., New Orleans, for defendant-appellant.
Before CHASEZ, BARNETTE, and JOHNSON, JJ.
BARNETTE, Judge.
The plaintiff, Joseph R. Duxworth, Sr., was awarded judgment for the use and benefit of his minor child, Joseph R. Duxworth, Jr., in the amount of $1,300, and for himself, individually, in the amount of $35 as special damages for personal injuries sustained by the minor child while playing on a trailer owned by defendant, Pat Caffey Contractor, Inc. The defendant has appealed.
The question posed for our consideration is whether actionable negligence on the part of the defendant has been established. The plaintiff relies on the application of the doctrine of attractive nuisance.
There is no serious dispute of the facts. The defendant contractor was engaged in a construction job at a housing project in a neighborhood in which resided the plaintiff child and other children. A piece of heavy equipment described merely as a tractor used in driveway and sidewalk paving was transported by defendant to the job site by means of a trailer. The trailer was described as "a tandem-type heavy built trailer for hauling equipment." It had eight wheels, four on each side on "tandem axles" (paired axles which are set close together, one behind the other). It was towed to the job site by means of a truck. The tow bar was disconnected to free the truck for other uses and the trailer was left idle in the street while the tractor was in use.
Children in the neighborhood were attracted to the trailer and, as might reasonably be expected, found it to be an interesting thing upon which to play. They discovered that by shifting their weight from one end to the other the trailer would tilt somewhat in the manner of a seesaw. Apparently an upward "push" or assist applied to the low, or down, end was necessary to tilt the trailer back. The Duxworth youth, a child six and a half years of age, was lying on his back underneath the tractor in a position to push it up again when it was tilted by the other children. While in this position the trailer came down with more force than anticipated and struck him about the mouth causing the injuries complained of.
The accident occurred about 4:30 p. m. on April 13, 1961, shortly after defendant's workmen had stopped work for the day. They were still in the vicinity of the job site and learned of the accident immediately, and the foreman, James Robertson, returned to investigate and lend such assistance as he could. Robertson testified that there had been some annoyance from the children in the neighborhood by tampering with equipment, throwing dirt on fresh concrete, and by playing on the trailer, and that he had "run them off" *499 on one or more occasions. No watchman was left on the job site to protect equipment or keep children away after working hours.
The trial judge applied the attractive nuisance doctrine. In his reasons for judgment dictated into the transcript at the conclusion of the trial, he said the child recognized some of the dangers, but, because of his immaturity, the child did not fully appreciate the consequence of his dangerous act and could not meet the test of capacity for contributory negligence. He found that he had not reached an age of accountability or responsibility.
The attractive nuisance doctrine has been accepted and applied by the courts of Louisiana in many cases. We think it would serve no useful purpose to attempt an analysis of the many cases in our jurisprudence in search of a similar factual situation, or to list on the one hand those in which recovery has been allowed and on the other those in which recovery was denied. We are not so much impressed by the number of cases on one side or the other as we are by the rules which have evolved with which to determine when a child should be allowed recovery.
At least one recognized authority on tort law in Louisiana[1] suggests that the "attractive nuisance" doctrine has outlived its usefulness, now that we have achieved a jurisprudential development of the concept of negligence by which the fault of the landowner (or owner of the instrumentality) may be determined without retaining the "special `nuisance' doctrine." XXVI La.L.Rev. at p. 524 (1965-66). We must agree that when we cling to the usage of the term "attractive nuisance" we are more likely to devote too much attention to the classification of the offending instrumentality either as an attractive nuisance or not. If the court classifies it as an attractive nuisance, Professor Malone warns of the danger that liability will follow as a matter of course without due regard to the presence or absence of negligence, which finally is the determining factor essential to a finding of fault, the crucial requirement for recovery in tort under LSA-C.C. art. 2315.
Our opinion in Martin v. Sessum Service Corp., 174 So.2d 180 (1965), was criticized by the writer of the above-mentioned Law Review article for having been devoted almost exclusively to the abstract question whether or not a house under construction is an "attractive" nuisance, without "a single reference to the presence or absence of negligence." The criticism is not entirely justified because in Sessum we did expressly hold: "Further, the record does not disclose that defendants were in any manner guilty of negligence." (174 So.2d at 183.)
We must agree that the element of negligence is of primary importance for recovery of damages in tort. This may be either active or passive; an act of commission or omission. It is in the latter form that we usually find or imply negligence in so-called attractive nuisance cases. If the owner of the instrumentality or property has failed to recognize its inherent danger, which any reasonably prudent person having knowledge of the thing would be presumed to know, or having recognized the danger and having failed to take the necessary steps to avoid injury, it may be said that he is negligent.
It is not enough that an instrumentality or property might under some circumstances become dangerous, for indeed thousands of ordinary things might become dangerous if improperly used or exposed. But if there exists some inherent danger, that is, something essential to the character of the thing, as explosives, electric conduits, etc., the owner is under a heavy duty of care to avoid injury. Likewise when a thing which is not inherently dangerous is used or exposed by its owner in such manner that it becomes dangerous, *500 it imposes upon him the duty to take reasonable measures to protect unsuspecting persons from injury. In these cases failure to do so constitutes negligence.
The obligation of the owner to protect unsuspecting persons from this danger becomes more onerous as the use or exposure of the thing is made available to children, for the obvious reason that children are immature, their experience limited and hence they are more unsuspecting; less aware; less appreciative of the danger.
Proceeding from this concept of negligence as an essential element in cases of this kind, we turn to the test suggested in 152 A.L.R. at p. 1263 and cited with approval by our Supreme Court in Saxton v. Plum Orchards, 215 La. 378, 40 So.2d 791 (1949), and applied in other cases.[2] There it is said to make out a case of liability in such cases it must appear:
"`1. That the injured child was too young to understand and avoid the danger.
`2. That there was reason to anticipate the presence of such children, either because of some attraction on the premises, or because the danger was in some place where children had a right to be.
`3. That there was a strong likelihood of accident.
`4. That the danger was one other than those ordinarily encountered.
`5. That the precautions not taken were such as a reasonably prudent person would have taken under the circumstances.'" 40 So.2d at 795.
This is a test of negligence and we agree with Professor Malone that it could be applied without use of the term "attractive nuisance." A similar test may be applied in the case of an adult who seeks damages for injury caused by a dangerous instrumentality or property. The age of the person injured has significance only to the extent that it affects his capacity to know, understand or appreciate the danger.
A trailer, as a refrigerator, a lawn mower, a bathtub, and countless other things, may not be inherently dangerous, but may, when used or left in a certain way, become extremely dangerous. Therefore, we will apply the foregoing test to determine if there was negligence in the manner in which the trailer in this case was used or exposed.
Had the trailer been left in a secure position, that is, completely immobile, we do not think it would have been any more dangerous than any other stationary platform upon which children might play without abnormal risks. Obviously it was not left in a secure position, and it then became an instrumentality which could be and was actually moved by children who found amusement in tilting it as a seesaw. Because of its extreme weight, balanced as it was on the tandem axles, it was something which could conceivably cause injury to an unsuspecting person. As stated above, defendant's foreman knew that children played on the trailer, but the transcript of testimony does not disclose whether he knew as a fact that they had tilted the trailer or used it in the manner of a seesaw. However, we must assume that he knew, as one experienced in the use of the trailer, of its balance on the tandem axles and of the possibility that if the tow bar were not connected to something stationary the trailer would tilt should enough weight be applied on one end.
Counsel for defendant strenuously argues the failure to meet the first and fourth of the tests enumerated above. He says in his brief: "Not only did the plaintiff understand and comprehend the possibility that the trailer would tip over on him, but he was lying there for the specific purpose *501 of having the trailer do so." Obviously, this is true, but we agree with the trial judge that the child, because of his immaturity, was not aware, or appreciative of the danger involved in such play. He underestimated the safe clearance beneath the trailer; its weight and the force of the impact. He misjudged his ability to stop the downward movement of the trailer and his strength to push it up again. He did not consider the possibility of the weight and balance being affected by shifting of position of the children (he testified there were about six) on the trailer. Had he been an older, more responsible youth, we might say he assumed the risk or was contributorily negligent, but we think he acted with the imprudence characteristic of an average six-and-a-half-year-old boy. We therefore hold that the requirement of the first test has been met.
There is no issue of fact on the second requirement. Not only was there reason to anticipate that children would be attracted to the trailer, but defendant's foreman had actual knowledge of their playing on it.
The fact that it was not secured in an immobile position is sufficient reason to hold that there was a strong likelihood that children playing on or tampering with it in their childish curiosity might sustain accidental injury.
Counsel's argument that the fourth requirement has not been met, reiterates the contention that the child fully understood the potential danger and therefore the element of a hidden trap was absent. In the first place the child did not comprehend fully the danger, as we have stated above. The danger was not one ordinarily encountered in a seesaw type of plaything. To the extent that its danger was beyond the child's comprehension, it might be said, if necessary to say, that it was nonapparent, unknown, and therefore hidden. Martin v. Sessum Service Corp., supra; Genovese v. New Orleans Public Service, supra, n. 2, and cases cited therein; Peters v. Town of Ruston, 167 So. 491 (La.App.2d Cir. 1936); McKenna v. City of Shreveport, 16 La.App. 234, 133 So. 524 (2d Cir. 1931).
The fifth requirement admits of no argument. The defendant did not take precautions to avoid the accident. There must be some limit to the precaution required of a building contractor to protect trespassers, whether children or adults, from dangers inherent in construction projects, and we will not attempt to say what is reasonable under all situations; but here it would have been sufficient to have secured the trailer tow bar to render it immobile. Failure to do so under the circumstances met the test of the fifth requirement.
We therefore hold that defendant's negligence has been established and that plaintiff is entitled to the recovery of damages.
We do not mean by this opinion to convey the impression that we are rejecting the "attractive nuisance doctrine" which has long been applied by the courts of this State, but rather only wish to place it in proper perspective. To find that an instrumentality or property holds a special attraction and danger to children is not the end in itself, but a step, in proper cases, toward the end objective. The objective of inquiry in all tort cases is to determine fault. To find fault we look for a breach or neglect of duty which constitutes negligence. It is not alone the maintenance of a potentially dangerous attraction, but that plus the neglect of him who maintains it to take the measures which are reasonably consistent with all the circumstances to prevent an injury from it, which constitutes tort liability. The final key to the right to recover damages is negligence.[3]
*502 The doctor who treated the child for his injuries died before trial, and there is no medical testimony in the transcript. From the testimony of the child and his parents, we find the injuries sustained by him consisted of a laceration of the lip and chin, requiring stitches (the number not stated) in the chin laceration. Five or six teeth were so loosened, some described as "dangling," that it was necessary to extract them. Fortunately these were baby teeth and would soon have been lost naturally. The permanent teeth had come in by time of trial and there was no permanent damage to them. The back of his head was hurt where it was compressed against the pavement, but this was no more than a bruise without permanent effect. He suffered some pain, such as would be consistent with the relatively minor injuries. There was discomfort and difficulty in eating as a result of the loss of his teeth. He missed three days from school.
The trial judge observed the child's scars, which he described for the benefit of the record as follows:
1. A scar on the left side of the chin described as "lineal type of small jagged scar about a half inch in length and about perhaps 1/64 of an inch in width." It is observable only on close inspection.
2. A scar about 1/8 inch by ¾ inch at the hair line at the base of the skull which can be seen by lifting the hair on the back of his head.
3. A slight scar in the hair on the left temple about 1/8 inch by 1 inch.
The trial judge awarded damages of $500 for pain and discomfort and loss of time from school, and $800 for the three scars described.
While we think the injuries were minimal and the allowance for the scars was somewhat more liberal than we might have allowed, there is not enough difference to say that the trial judge abused the "much discretion" rule.
The only item of special damage proved was $35 representing the amount paid by the child's father to the treating physician for which amount judgment was awarded the father.
The judgment appealed from is affirmed, at appellant's cost.
Affirmed.
NOTES
[1] Wex S. Malone, Professor of Law, Louisiana State University.
[2] Scott v. Boh Bros. Construction Co., 195 So.2d 353 (La.App. 4th Cir. 1967); Beasley v. Guerriero, 123 So.2d 774 (La. App.2d Cir. 1960); Genovese v. New Orleans Public Service, 45 So.2d 642 (La. App.Orleans 1950).
[3] The writer of this opinion feels that since the word "nusiance" implies something annoying, offensive or harmful, which ought to be avoided or abated as something evil or wrong, thus casting an aura of guilt about the owner of the thing, it would seem that a more appropriate descriptive term should be adopted. For indeed, most of the things classed as "attractive nuisances" by the courts are useful, desirable, beneficial and often essential to our way of life. The process or legal principle employed to arrive at the conclusion of negligence vel non should not be described or alluded to in terms which convey a false impression of wrongdoing per se. This is especially true when the trier of fact is a jury.