PICKETT, Judge.
This is a suit in tort instituted by plaintiff against the defendant, the insurer of the Town of Rosedale, Louisiana, to recover damages for the loss of her four-year-old son, Lonnie Scott, who died as a result of drinking some poisonous weed killer from a barrel on the open premises owned by the Town of Rosedale, Louisiana. The defendant answered, alleging its insured, the Town of Rosedale, was free of fault, and in the alternative alleged contributory negligence on the part of the plaintiff. After a trial on the merits, the district court granted plaintiff a judgment against the defendant in the sum of $7,869.60, together with interest thereon at the rate of five per cent per annum from date of judicial demand, May 27, 1968, until paid, and all court costs. The defendant has appealed. The plaintiff has answered the appeal, and asked that the award be increased to $25,-369.60, together with legal interest and costs of court.
The pertinent facts of this lawsuit are not disputed. The evidence shows that in the late afternoon, on July 15, 1967, the *304 plaintiff together with a friend, Esther Mae Hawkins Gibson, took her two minor sons, Depeteria, age five years, and Lonnie, age four years, to the barber shop in Rosedale, Louisiana, to get their hair cut. The barber shop to which the plaintiff had taken her children was located some 50 or 60 feet southwest of a three-sided metal shed, or barn, owned by defendant’s insured, and used' by it to store a tractor and other equipment and materials. The metal shed is located on a lot owned by the Town of Rosedale and is about 75 feet south of the Highway and in the southwest quadrant of the highway intersection. There is an enclosed area in the shed in which the Town of Rosedale stored gasoline and tools and which was kept locked. Outside of the above mentioned shed, against the west wall thereof, there was a 55 gallon barrel of poison used by the Town of Rosedale to control weeds along its streets and roads and in its ditches. The barrel of weed killer, which was fitted with a faucet or spigot on one end, rested on a piece of concrete culvert with the spigot pointing downward about two and one-half feet above ground level. The barrel containing the poison did not have any kind of locking device to prevent the contents from being drained out of the barrel.
When Lonnie and his older brother had finished their hair cuts, they went out in front of the barber shop to play. In a few minutes after the children had gone out to play the older child ran back to the barber shop and reported that Lonnie had drunk water from the barrel. The plaintiff learned the barrel contained poison, and she went to a nearby bar to get someone to take Lonnie to a doctor. Rudolph Trosclair, who had an automobile, carried the plaintiff to see Dr. E. L. Major who was found at the home of his son a short distance away. At the time plaintiff reached Dr. Major, her son was already vomiting and showing signs of serious illness. Acting upon the advice of Dr. Major, Rudolph Trosclair took the plaintiff and her son to the Baton Rouge General Hospital where the child was seen by Dr. Clifton T. Morris. Dr. Morris, who testified by deposition, said the child was vomiting and frothing mucus out of his mouth when he saw him. He gave the child the medication his condition indicated. He washed out his stomach, ordered a suction machine, and placed him under an oxygen tent. However, notwithstanding all the medical aid that was rendered, about one o’clock July 16, 1967, Lonnie Scott died as a result of the ingestion of the weed killer.
The trial court gave no written reasons for judgment. In this court the plaintiff contends both in brief and in oral argument that the attractive nuisance doctrine is applicable. On the other hand, the defendant forcefully contends that a showing of an attractive nuisance is absent. With regard to the attractive nuisance doctrine, defendant cites the following requisites for the application of that doctrine as set forth in Saxton v. Plum Orchards, 215 La. 378, 40 So.2d 791:
“1. That the injured child was too young to understand and avoid danger.
2. That there was reason to anticipate the presence of such children, either because of some attraction on the premises, or because the danger was in some place where children had a right to be.
3. That there was a strong likelihood of an accident.
4. That the danger was one other than those ordinarily encountered.
5. That the precautions not taken were such as a reasonably prudent person would have taken under the circumstances.”
The plaintiff in support of her contention that the undisputed facts in this case establish negligence on the part of defendant’s insured, its agents and employees cites Westerfield v. Levis, 43 La.Ann. 63, 9 So. 52; Hunt v. Rundle, 10 La.App. 604, 120 So. 696, 697; and 10 A.L.R.Zd 22. In *305 Hunt v. Rundle, a plumber’s employee who had been doing some plumbing work at plaintiff’s residence, left a five-gallon can containing gasoline under plaintiff’s dwelling. The gasoline container was not properly sealed. The plaintiff’s seven year old son took some gasoline from the can to a playhouse on the premises and used it to start a fire which ignited the child’s clothing and burned him. In allowing recovery, the court said:
“It is well recognized that the degree of care to be exercised in storing dangerous articles is commensurate with the dangerous character of the article, and it cannot be said that a commodity, such as gasoline, which is in general use, and which known, or should be known, to have access to the place, as would be the case as to substances which are recognized is not inherently dangerous, must be kept with the same degree of care as to the place of storage and persons who are as inherently dangerous; however, it must be conceded that some degree of care is required in storing gasoline, the presence of which is recognized as increasing the danger from fire, and as dangerous in the hands of children, who are not familiar with its properties, and we do not think that the workman of defendant, in storing the gasoline under plaintiff’s residence, where it was easily accessible to children of whose presence he was aware, can be said to have exercised the slightest degree of care, either with respect to the place which he selected to store the gasoline or with regard to the children, whom he knew had access to the place.”
There is no doubt but that the weed killer which Lonnie Scott drank was a deadly poison and, hence, a dangerous agent or instrumentality. Dr. Chester A. William, Jr., the coroner of East Baton Rouge Parish, testified that the active toxic ingredient in the weed killer was an arsenic compound. He expressed the opinion that because of the child’s age, that without immediate lavage of the stomach, the ingestion of the compound would be fatal. He said that he did not believe that treatment after an hour would have been effective. Dr. Major testified that when he saw the child, it was vomiting a mucus that was typical of arsenic poisoning. Dr. Clifton T. Morris, Sr., expressed the opinion that all of the child’s symptoms and his resulting death were consistent with the ingestion of a weed killer containing sodium arsenite. Mr. Gilbert Cook, the mayor pro tem, testified that the barrel containing the weed killer had a label showing that the contents of the barrel was poisonous. In answer to Interrogatory No. 5 propounded by plaintiff, the defendant admitted the active ingredient of the weed killer was sodium arsenite 40% content.
Lonnie Scott was only four years old, and too young to understand and avoid the danger. Mr. Gilbert Cook, the mayor pro tem and councilman of the Town of Rosedale, admitted that children played on and around the town lot; and that children went to and from the barber shop and along the road in front of the town shed. Neither the shed nor the town lot was enclosed in any manner at the time plaintiff’s child drank the poison. The lot was open, adjacent to the barber shop; and the shed was only about twenty steps from the barber shop. The barrel which contained the poison liquid was placed on the outside of the shed where it was easily accessible. It was fitted with a spigot th^t resembled a water faucet; and had no kind of locking device. This tragic event took place on a July afternoon. The fact that the child drank some of the weed killer logically leads to the conclusion that he was thirsty. The unfortunate child, upon seeing the barrel fitted with a faucet or spigot like that of a water barrel or tank, could very well have been attracted to it with the hope of securing a drink of water. The fact that Lonnie Scott was able to turn the spigot and drink the weed killer shows that it was easily accessible to him; and his subsequent death as a result of drinking the weed killer shows that it was an inherently dangerous instrumentality.
*306 It is our opinion that the Town of Rosedale, its agents, and employees were grossly careless and negligent in placing the poisonous weed killer in an unenclosed, and unprotected, place where it was easily accessible to children, where the Town officials knew that children frequently played.
On the plea of contributory negligence, it is shown that the child, Lonnie Scott, was only four years of age and that he could not be held guilty of contributory negligence. Westerfield v. Levis, 43 La.Ann. 63, 9 So. 52. The evidence shows that the plaintiff’s two children after receiving their hair cuts, went out to play while the plaintiff was paying the barber. At the same time, Esther Mae Hawkins Gibson, a friend of the plaintiff’s, was watching the children from time to time. Neither the plaintiff nor Esther Mae Hawkins Gibson seemed to have known anything about the weed killer being stored nearby. Therefore, we cannot say that the child was not properly supervised; particularly in view of the brief period of time that elapsed after the children left the barber shop until Lonnie Scott drank the poison. In Embry v. Reserve National Insurance Co., 12 La.App. 97, 124 So. 572, the court said:
“Neither do we think plaintiffs were negligent in permitting the child to play, unattended, in a public street. It was said in Westerfield v. Levis, 43 La.Ann. 63, 9 So. 52, that parents are not obliged to restrain their children within doors at their peril, and that the fact that a child five years old had strayed more than two blocks from home, at play with other children, is not of itself evidence of contributory negligence on the part of the parents.”
The evidence shows that the plaintiff immediately upon learning that her son had ingested the weed killer, and when she learned from the barber that the weed killer was poisonous, ran to a nearby bar to get someone to assist her in obtaining medical assistance. In the meantime, she did obtain some cooking oil which she had heard would be beneficial to a person who had drunk poison; and gave some of that to her son. She obtained the assistance of Rudolph Trosclair who assisted her in locating Dr. Major. By the time they had found Dr. Major, the child was already vomiting. The plaintiff, then, acting upon the advice of Dr. Major, carried the child to a hospital in Baton Rouge, where, after some delay, she obtained the medical attention of Dr. Clifton T. Morris, Sr. From the foregoing, we are unable to agree that the plaintiff was not diligent in seeking medical attention.
Both parties complain of the amount of the award, which was for the sum of $7,869.60, representing $369.60 for special damages, and $7500.00, for loss of love and affection and pain and suffering. The defendant contends that the record fails to show that plaintiff suffered -damages because of the loss of love and affection. It is our opinion that the record shows the plaintiff did what she could under the circumstances to save her child’s life. That in itself certainly manifested love and affection. Lonnie Scott lived for a little more than seven hours after drinking the poison during which time he was violently and seriously ill. He undoubtedly endured much pain and suffering as a result of drinking the poison liquid.
The trial judge had the benefit of observing the witnesses, and particularly the demeanor of the plaintiff and evaluating their testimony. An award of damages is of necessity somewhat arbitrary and must vary with the facts and circumstances of each case. It is the settled jurisprudence of this state that the trial court is intrusted with large discretion in making such awards, which discretion ordinarily should not be disturbed upon appellate review. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149. We do not find that the foregoing award amounts to an abuse of the “much discretion” vested in the triers of fact in instances of this na *307 ture. We, therefore, affirm the award made by the trial court to the plaintiff.
For the reasons assigned, the judgment of the trial court is affirmed. The costs of this appeal are assessed against the defendant-insurer.
Affirmed.